## In re MERTON R.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1983.

Decided Oct. 28, 1983.

Bowie & Parker, Paulette P. Parker (orally), Portland, for plaintiff.

Arlyn H. Weeks (orally), Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

In reviewing in this appeal a District Court (Portland) order terminating the mother's parental rights to the minor child Merton R., we again address the question of the sufficiency of the record evidence to support the findings statutorily required for termination. On appeal, the Superior Court (Cumberland County) affirmed. On further appeal to the Law Court, we hold that the record before the District Court did not contain clear and convincing evidence to support one of its necessary findings of fact, namely, that the mother had refused to take responsibility for Merton. Accordingly, we reverse the termination order as to the mother.[1]

On July 31, 1981,[2] the Maine Department of Human Services petitioned the District Court for termination of parental rights to

---

1. The District Court also terminated any parental rights of both the child's legal father and his putative father. Neither filed an appeal.

2. Neither the court system nor the Department of Human Services nor the court-appointed counsel representing the parents can be proud of the unreasonable length of time (nearly 27 months) consumed in bringing this delicate proceeding to a final conclusion. All concerned ought to do better.

Merton R., pursuant to 22 M.R.S.A. §§ 4052–4055 (Supp.1982–1983). After hearing, the District Court on December 1, 1981, granted the petition. The District Court found that the mother had refused to take responsibility for the child, that her circumstances were unlikely to change in a reasonable time, and that termination was in the child's best interests. The Superior Court, acting as an intermediate appellate court, M.D.C.Civ.R. 73(a), held that the evidence before the District Court was sufficient to support those findings. On appeal from the Superior Court, the Law Court must independently review the sufficiency of the District Court record to support its order terminating the mother's parental rights. *See, e.g., Auto Sales & Finance Co. v. Seavey,* 401 A.2d 648 (Me.1979) (Law Court directly reviewed District Court finding on clearly erroneous standard). After such an independent review, we reach a conclusion opposite from that of the Superior Court.

The controlling statute provides that a nonconsensual termination of parental rights may be ordered only after

[t]he court finds, based on clear and convincing evidence, that:

(a) The parent is unwilling or unable to protect the child from jeopardy or has willfully abandoned the child or has refused to take responsibility for the child;

(b) The circumstances are unlikely to change in a reasonable time; and

(c) Termination is in the best interests of the child.

22 M.R.S.A. § 4055(1)(B)(2). The trial judge must make all three required findings, (a), (b), and (c). Finding (a) relating to the parenting deficiency that justifies termination of parental rights may take any one of three alternatives forms. It was the last alternative, refusal to take responsibility for the child, that the District Court found to be adequately proven against the mother in the case at bar. Our appellate review of that finding leads us to disagree.

On appeal, any factfinding "is tested under the 'clearly erroneous' standard by determining whether there is *any* competent evidence in the record to support it." *Harmon v. Emerson,* 425 A.2d 978, 981 (Me. 1981) (emphasis in original). In parental termination cases, section 4055(1)(B)(2), as quoted above, also requires that the ultimate factual conclusions of the trial judge be "based upon clear and convincing evidence." *See In re Shannon R.,* 461 A.2d 707, 711 (Me.1983), *quoting Horner v. Flynn,* 334 A.2d 194, 199 (Me.1975). *See also Santosky v. Kramer,* 455 U.S. 745, 747–49, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982). In the case now before us, we must reverse because the District Court's finding of the mother's refusal to take responsibility for the child is clearly erroneous, being unsupported by any competent evidence.

The District Court could have found the following subsidiary facts concerning the mother's responsibility for Merton. The child, born in 1974, has serious physical and psychological problems, requiring substantial professional care. Within a year of his birth, the mother placed Merton with her sister and brother-in-law, who lived some 20 miles away. On August 6, 1975, a hearing was held that resulted in the state's obtaining temporary custody of the child. On March 31, 1976, the child was committed to the custody of the Maine Department of Human Services.

Continuously since 1975, Merton has lived with his aunt and her husband, who, with the Department's assistance, have provided all his medical and other needs. Except for a brief time in 1975, the mother has rendered no financial support to the child. The mother has visited the child two to four times a year. Those visits have been arranged and financed by the Department, and the mother has made no visits on her own. The mother occasionally did not visit Merton even though the Department caseworker had arranged, and provided bus fare, for her to do so. Aside from those visits the mother has had no contacts with Merton.

During October, 1978, the mother agreed to allow her sister and brother-in-law to adopt the child. Sometime thereafter she

withdrew her consent. At no time from 1975 until one month or two before the termination hearing did the mother ask to have the child returned to her. Shortly before, the mother had obtained her first job, as a chambermaid. She took home $84 to $92 per week and had her own apartment. At the hearing the mother proposed to have a foster mother care for the child during the day and to have the child stay in the mother's apartment at night.

■ This is our first opportunity to consider the meaning of the phrase "has refused to take responsibility for the child" in section 4055. We construe that language to require evidence of willfulness. *See In re Johnson,* 9 Wis.2d 65, 73–74, 100 N.W.2d 383, 389 (1960) (refusal to provide child care is a willful or deliberate omission). That construction is suggested by the contrast between the quoted refusal language and the first alternative form of required finding (a): "The parent is unwilling or unable to protect the child from jeopardy ..." The legislature could easily have phrased the third alternative in parallel fashion, "The parent ... has [been unwilling *or unable*] to take responsibility for the child." However, it chose the verb phrase "has refused," which in plain meaning connotes a volitional choice beyond a mere state of passivity because of inability to take responsibility.[3] The awesome consequences of an order terminating parental rights drive us back from giving the term "has refused" any broader significance than it naturally carries. As the Supreme Court noted in *Santosky v. Kramer,* 455 U.S. at 759, 102 S.Ct. at 1397, "Few forms of state action are both so severe and so irreversible."

■ Although the record is replete with evidence indicating that the mother failed or was unable to assume responsibility for Merton, we find nothing there that fairly can be characterized as evidence of her willful refusal to do so. No witness testified that the mother was unwilling to assume responsibility for Merton's care. Rather, the evidence points to the conclusion that the mother, due to her financial status and other problems of her own, was unable to take responsibility. The Department relies heavily upon the testimony of its own caseworker to prove the basis for termination. His testimony focused on the problems involved in arranging visits between mother and child and the difficulties the mother was experiencing in establishing a stable home environment. The caseworker was not asked whether the mother ever had refused to take responsibility for her son. Rather than present evidence as to the mother's conscious refusal to care for Merton, the Department proved a substantial case of her inability to do so. Having decided that a refusal to take responsibility connotes significantly more than a mere failure to do so, we conclude that the petitioning Department failed to meet at least the first of the evidentiary burdens imposed on it by section 4055(1)(B)(2).

We do not reach the questions whether the District Court record contained sufficient evidence to support the second and third findings required by section 4055(1)(B)(2).

The entry is:

Judgment of the Superior Court vacated.

Remanded to the Superior Court for entry of the following judgment: "Judgment of the District Court so far as it terminated the parental rights of the mother is hereby reversed; case remanded to the District Court for entry of the appropriate judgment."

All Concurring.

---

3. In another context, the Law Court distinguished a refusal from a mere failure to pay taxes. *Inhabitants of Town of Cape Elizabeth v. Boyd,* 86 Me. 317, 318, 29 A. 1062, 1063–65 (1894). *See also Vance v. Speakman,* 409 A.2d 1307, 1309 n. 2 (Me.1979) (refusal to rent); *Lowell v. Maine Employment Security Comm'n,* 159 Me. 177, 182, 190 A.2d 271, 273 (1963) (refusal to accept work).