**In re JOHN JOSEPH V.**

Supreme Judicial Court of Maine.

Argued Sept. 3, 1985.

Decided Nov. 4, 1985.

Sophie. L. Spurr (orally), Blue Hill, for plaintiff.

Anthony W. Beardsley, (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

This is an appeal by the father from the judgment of the Probate Court, Hancock County, terminating his parental rights to the minor child John Joseph V. The issue on appeal is whether the record contains clear and convincing evidence to support the probate judge's finding that the father has been unable to take responsibility for the minor child. We determine that the evidence does not support such a finding, and, therefore, reverse the termination order of the Probate Court.

As part of an adoption proceeding, the mother of John Joseph V. petitioned the Probate Court for termination of the father's parental rights pursuant to 22 M.R. S.A. § 4055 (Supp.1984–1985). After a hearing on December 18, 1984, the probate judge ordered the termination of the father's rights. In a one paragraph order, the probate judge found that the father "has been unable to take responsibility for that child within a time reasonably calculated to meet the child's needs and that termination is in the best interests of that child."

The pertinent statute provides that, when a petition of termination for parental rights has been filed as part of an adoption proceeding[1] and there is no consent of the parent whose rights are sought to be terminated, the court may order termination of parental rights if:

(2) The Court finds, based on clear and convincing evidence, that:

(a) Termination is in the best interest of the child; and

(b) Either:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reason-

---

1. Pursuant to Title 19 Ch. 9 § 531 et seq.

ably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S.A. § 4055 1(B)(2) (Supp.1984–1985).

The Probate Court found that the father has been unable to take responsibility for the child—thus finding that the petitioner had satisfied the provisions of § 4055(1)(B)-(2)(b)(ii). The statutory language quoted above required the Probate Court to base this ultimate conclusion on clear and convincing evidence. *See also In Re Mertons R.*, 466 A.2d 1268, 1269 (Me.1983); *Santosky v. Kramer*, 455 U.S. 745, 747–49, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599, 606–08 (1982).

We have defined clear and convincing evidence to require that the party with the burden of persuasion must place in the "factfinder an abiding conviction that the truth of [his] factual contentions are highly probable." *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153 (Me. 1984). Where clear and convincing evidence is required, the appropriate standard of appellate review is "whether the factfinder could reasonably have been persuaded that the required factual findings was or was not proved to be *highly probable.*" *Taylor*, 481 A.2d at 153; *In Re Debra B*, 495 A.2d 781, 783 (Me.1985). On appeal the Probate Court's findings must be sustained if there is rational or competent support in the record to do so. *Harmon v. Emerson*, 425 A.2d 978, 981 (Me. 1981). In other words, we review the findings to see whether they were clearly erroneous. *In Re Merton, R.*, 466 A.2d 1268, 1269 (Me.1983).

The probate judge made no specific findings of fact or conclusions of law, nor were they requested by appellant's attorney. We must assume, therefore, that the probate judge resolved all questions of fact necessary to support his decision in favor of appellee. *Conover v. Conover*, 403 A.2d 352, 354 (1979). The evidence adduced at the hearing may be summarized as follows. Appellant and Appellee, the natural parents of the ten year old child, born on October 11, 1975, were divorced in 1977. The mother was given custody of the child and the father was given customary visitation rights. For the next 14 months the Appellee and Appellant lived apart and the father sent regular support payments. In November 1978, the parents reconciled until October, 1979. During this period both parents contributed to the support of their son. In November, 1979 the Appellee and child moved from Massachusetts to Hancock, Maine. Appellee provided the father with a post office box number in Ellsworth but provided him no information that would enable him to make direct contact with his child. Thereafter, the father stopped sending child support payments. In December, 1979, the father made a trip to Maine to discover the child's whereabouts through the mother's parents who lived in Alfred. He was unsuccessful. In January, 1980, the father spent a week's visitation with his son at his ex-in-laws' home. The in-laws, however, refused to tell the father where the mother was living and how he could make future direct contact with his son. In April, 1980, the mother remarried and at that time decided that further contact between the natural father and the son was no longer in the best interest of the child. She made no further effort to contact the father although she was, at all times, aware of his location. The father continued living with his mother in Massachusetts and experienced a sporadic work history. During the five years since he last had contact with his ex-wife and son, he had been employed for approximately half the time.

We do not address the first required finding of the Probate Court, that termination of parental rights was in the best interest of the child, because it was not raised as an issue on appeal. Instead, in the case at bar, we are applying recently amended statutory language to the finding by the Probate Court that the appellant "has been unable to take responsibility" for his son. Under § 4055(1)(B)(2)(b)(ii), the Court may alternatively find that the parent has been either unwilling or unable to take responsibility for the child. *Inability* under the statute must be distinguished from *unwillingness*. We understand the word "unable" to be synonymous with incapable, and, as employed in its relevant statutory context, to mean that a parent is incapable, for whatever reason, to take responsibility for his or her child. In distinction, "unwillingness" connotes a mental state tending to show lack of disposition or inclination to take such responsibility. We add, however, that we are not called upon in this case to define "unwillingness" as it applies to this statute. Appellee named several factors which she perceived to demonstrate *inability*: (1) the fact that during the marriage the father did not take on child care tasks such as changing diapers or feeding the child, (2) the fact that the father had a post office box number where he could send support and letters to the child, but failed to do so, and (3) the fact that the father was employed during part of the five year absence and could have sent support payments. It is our judgment that these factors point more toward the element of unwillingness, rather than that of inability, to take responsibility for the child.

We view the evidence as presenting a situation where both parents can be found to be at fault for the father's nonpayment of support and failure to remain in contact with his son. While the record supports the fact that the father was neglectful in not providing support and not maintaining contact with his son, the record is equally clear that the mother purposefully resolved to close all avenues of contact between the appellant father and their son. She never provided him with an address where the child was located. We do not consider that simply providing appellant with a post office box address was a reasonable means by which a father could maintain contact with his child. *Hinkle v. Lindsey*, 424 So.2d 983, 985 (Fla.App.1983). Moreover, specifically regarding the father's failure to provide support, the record shows that he regularly provided support until such time as he was denied consistent direct contact with his son. It may well be said that the mother tacitly forewent the payment of support as a means of carrying out her purpose of cutting off all contact between the father and their son. There is no record that she ever availed herself of legal means to obtain child support from the father. In addition, a substantial part of the evidence presented in this case was directed towards establishing the "best interest" criterion, rather than towards inability to take responsibility for the child.

Upon careful review of the entire record, we are convinced that the Probate Court could not reasonably have been persuaded that appellant's inability to take responsibility was proved to be "highly probable." *Taylor*, supra 481 A.2d at 153.

The entry is:

Judgment of the Probate Court vacated.

Remanded to the Probate Court for entry of an order denying termination of the father's parental rights.

All concurring.