**In re HOPE H.**

Supreme Judicial Court of Maine.

Argued March 7, 1988.
Decided May 6, 1988.

Gerard P. Conley, Jr. (orally), Cloutier, Barrett, Cloutier & Conley, Portland, for appellant.

Kristina Joyce (orally), CascoLegal Clinic, Portland, for appellee.

Thomas Peter, Peters & Randlett, Lewiston, for guardian ad litem.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

The Respondent-father appeals from the judgment of the Cumberland County Probate Court upon the petition of the mother, terminating his parental rights to his eight-year-old daughter, Hope. He urges that on this record there is (1) insufficient evidence of his unwillingness or inability to take responsibility for the child within a time reasonably calculated to meet the child's needs, and (2) insufficient evidence that the termination is in the child's best interests, 22 M.R.S.A. § 4055(1)(B)(2)(a) and (1)(B)(2)(b)(ii) (Supp.1987).

Because we conclude that the mother has not sustained her burden on the second requirement, of establishing by clear and convincing evidence that termination of the natural father's parental rights is in the child's best interests, we vacate the judgment below.

The couple was married in November, 1979. Thirteen months after the birth of this, their only child, in May, 1980, the couple was divorced. The divorce judgment granted custody of Hope to the mother with reasonable visitation rights to the father. Two days after the mother remarried in July, 1986, she and her new husband filed a petition for him to adopt Hope. To make possible that adoption, the mother

commenced this action in December, 1986, to terminate the parental rights of Hope's natural father.

■ We apply a two-prong test. A probate court may order termination of parental rights if, as here, an adoption petition has been filed pursuant to 19 M.R.S.A. § 533–A (Supp.1987), and by clear and convincing evidence the probate court finds (1) that termination is in the child's best interests, and (2) that the parent has been unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs. 22 M.R.S.A. § 4055(1)(A)(2), (1)(B)(2)(a), and (1)(B)(2)(b)(ii) (Supp.1987). A probate court's finding that the evidence was clear and convincing shall not be set aside unless the factfinder could not reasonably have been persuaded that the required factual findings were proved to be highly probable. *In re Christopher J.,* 505 A.2d 795, 797 (Me.1986); *Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 153–54 (Me. 1984).

Our statute requires proof to a high probability that a parent is unwilling to assume parental responsibilities and that termination serves the child's best interests. 22 M.R.S.A. § 4055(1)(B)(2)(a) and (1)(B)(2)(b)(ii) (Supp.1987). Both the statute and our case law make clear that unwillingness and best interests are two distinct elements that must be proved independently. *Id.* at § 4055(1)(B)(2)(a); *In re Cassandra B.,* 531 A.2d 1274, 1275 (Me.1987); *In re Daniel C.,* 480 A.2d 766, 770 (Me.1984); *In re Shannon R.,* 461 A.2d 707, 712, 714, fn. 11 (Me.1983).

As regards the proof of the father's unwillingness, in the case before us we cannot say that the Cumberland County Probate Court clearly erred in determining that he lacked the disposition or inclination necessary to meet reasonably his daughter's needs. *See In re John Joseph V.,* 500 A.2d 628, 630 (Me.1985) (defining unwillingness in dicta).

■ We move on to the second requirement. There the mother's proof falls short. In determining whether a termination of parental right is in the child's best interests, our statute requires a court to consider "the needs of the child, including the child's age, attachment to relative persons, periods of attachment and separation, the child's ability to integrate into a substitute placement or back into his parents' home, and the child's physical and emotional needs." 22 M.R.S.A. § 4055(2) (Supp.1987).[1] Here the Cumberland County Probate Court decided that termination was in Hope's best interests because it foresaw that the change would insure stability in her life and allow an adoption and bonding of Hope with a new family unit.

Here the evidence indicated that Hope was an emotionally stable and normal child who enjoyed her time with "daddy Bob," as she called her natural father. The only evidence to the contrary was a single incident that had occurred when the little girl was five years old, indicating that she was uncertain as to which man was her father. That one incident of uncertainty does not clearly and convincingly establish the child's present need for a single father figure in her life. Although the stability in, and bonding with, a new family unit— her step-father, mother, and an expected sibling—may seem desirable, there is no clear and convincing evidence that Hope's current relationship with her own father in any way impedes that development.[2] *Cf. In re Joseph P.,* 532 A.2d 1031, 1034–34 (Me.1987) (substantial evidence of disruption in child's life). The mother presented no evidence whatsoever that the natural father causes an emotional disruption in Hope or poses any physical threat to her. *Cf. In re Misty Lee H.,* 529 A.2d 331, 333 (Me.1987) (evidence of parental violence and emotional harm); *In re Dean A.,* 491

---

**1.** *See generally* Note, *In re Misty Lee H.: Application of the Best Interests Standard in Parental Rights Terminations,* 40 Me.L.Rev. 157 (1988).

**2.** Indeed, the father seeks only to retain the visitation rights to, and not custody of, his daughter. Therefore, unlike *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599

(1982), we need not determine whether the natural parent can and will provide a normal family home. 455 U.S. at 767, 102 S.Ct. at 1402. The narrower question here is whether the father's limited visitations will jeopardize that homelife.

A.2d 572, 574 (Me.1985) (child clearly suffered physical and emotional trauma). Nor was there any evidence that Hope has problems symptomatic of such a disruption, such as anxiety, depression, aggression or withdrawal. *Cf. In re Maria C.*, 527 A.2d 318, 318–19 (Me.1987) (evidence of emotional jeopardy, severe anxiety and stress); *In re Randy Scott B.*, 511 A.2d 450, 455 (Me. 1986) (evidence of severe emotional distress); 22 M.R.S.A. § 4002(10)(B) (Supp. 1987) (symptoms evidencing jeopardy). She completely failed to establish that the father's contacts with their daughter were interrupting or impeding Hope's development.[3]

 From the evidence of a parent's shortcomings in meeting a child's needs it cannot be inferred that termination is necessarily in that child's best interests. Compare *In re Randy Scott B.*, 511 A.2d at 455; *In re Daniel C.*, 480 A.2d at 768–69 (both cases reject inferring willful abandonment from incarceration). Beyond violating the statute's clear dictate for distinct proof, such an inference is, as the United States Supreme Court has found, "hazardous." *Santosky v. Kramer*, 455 U.S. at 765, fn. 15, 102 S.Ct. at 1401, fn. 15. This is because the child may benefit from preserving a limited relationship with her own father despite his inadequacies.[4] This benefit may be realized without damage to the child's bonding with her step-father.

In any event, a petitioner has the burden to show clearly and convincingly that the child does not and cannot so benefit. Here the mother has not met this burden. *Accord In re John J.V.*, 500 A.2d at 630 (insufficient evidence of inability to assume parental responsibilities); *In re Merton R.*, 466 A.2d 1268, 1270 (Me.1983) (insufficient evidence of willful refusal to assume parental responsibilities); *In re Shannon R.*, 461 A.2d at 715 (insufficient evidence of, inter alia, abandonment).[5]

Our conclusion is buttressed by the Probate Court's negative approach in concluding that termination is appropriate because the mother proved that it will have "no significant negative impact on the child or her present limited relationship" with her natural father. Mere proof that termination would not harm the child falls dramatically short of establishing that termination is affirmatively in the best interest of the child. Indeed, such a shortcoming only evinces the insufficiency of the mother's proof that termination was in the little girl's best interests.[6]

In sum, it is a two-prong test and this Petitioner has not met more than one of the statute's two requirements.

The entry is:

Judgment vacated.

Remanded for entry of judgment denying petition for termination of the father's parental rights.

All concurring.

---

**3.** By recognizing this failure we do not detract in any way from the deference that we are disposed to accord a trial court's determination of a child's "best" interests. *In re Cassandra B.*, 531 A.2d 1274, 1275 (Me.1987). The result here only reaffirms the requirement that the two-prong test must be satisfied by clear and convincing evidence before the trial court has an area within which to exercise its discretion.

**4.** Because the father's shortcomings in this case clearly do not rise to the level of jeopardy, the mother cannot argue that those shortcomings, *ipso facto*, threaten the child's best interests.

**5.** Simply put, the present case is a reversal of the problem in *In re John J.V.*, 500 A.2d 628 (Me.1985). There, we vacated a decision to terminate because the evidence was directed solely towards the best interests criterion, which is the other prong of the statutory test, with none of the evidence directed towards the parent's unwillingness or inability to take responsibility. *Id.* at 630. That case illustrates the need for close appellate scrutiny of unwillingness and best interests as separate elements.

**6.** *Accord Alsager v. District Court*, 406 F.Supp. 10, 23–24 (S.D.Iowa 1975), *aff'd*, 545 F.2d 1137 (8th Cir.1976), where a federal district court found in a state-initiated parental rights termination proceedings that the state not only failed to prove by clear and convincing evidence that the children would be harmed by a continuing relationship with their mother, it failed to demonstrate that the consequences of continuation of the parent-child relationship would be more harmful to the children than its termination.