**In re AMANDA D., et al.**

Supreme Judicial Court of Maine.

Argued June 16, 1988.
Decided Oct. 28, 1988.

L. James Lavertu (orally), Madawaska, for appellant.

James E. Tierney, Atty. Gen., Geoffrey P. Goodwin (orally), Asst. Atty. Gen., Human Services Section, Augusta, for appellee.

John M. Pluto, Van Buren, Guardian Ad Litem.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

Gail B., mother of Amanda D. and Eric D., appeals from a judgment of the District Court (Madawaska, Daigle, J.) terminating her parental rights. 22 M.R.S.A. § 4055 (Supp.1987). On appeal, she challenges the sufficiency of the evidence supporting the order of termination. The State moves for dismissal of the appeal, claiming that the appeal was not perfected in a timely manner. We deny the State's motion and affirm the judgment terminating parental rights.

■ We first address the State's motion to dismiss the appeal. An appeal from an order terminating parental rights proceeds directly from the District Court to the Law Court. 22 M.R.S.A. § 4006 (Supp.1987–1988). Although Gail B. did not file a notice of appeal to this Court within the thirty-day time limit, we find a showing of excusable neglect to warrant an extension of time for filing under M.R.Civ.P. 73(a). After entry of the termination order on October 27, 1987, Gail B. filed within thirty days a notice of appeal to the Superior Court. Upon learning of the error shortly after the appeal period expired, she sought relief in the District Court on December 1, 1987, in the form of a motion to amend the notice of appeal to reflect the proper court. In the alternative, she asked that the motion to amend be considered as a motion to extend the period for filing the notice. The District Court declined to entertain the motion. We treat Gail B.'s motion to amend dated December 1, 1987, as a motion for extension of time and a new notice of appeal to this Court as of that date. We find that the record contains a sufficient demonstration of excusable neglect to warrant an extension of time to include the December 1, 1987 notice. We deny the State's motion for dismissal and reach the merits of this case.

■ Upon review of the merits, however, we find that the District Court had sufficient evidence before it to support its conclusion that the statutory requirements for termination of parental rights were proved to a high degree of probability. *See In re Maria C.*, 527 A.2d 318, 319 (Me.1987); *In re John Joseph V.*, 500 A.2d 628, 629 (Me. 1985). Although the District Court did not issue any separate findings of fact, "[w]hen no findings of fact are made, it is assumed on appeal that the trial court found for the prevailing party on all factual issues necessarily involved in the decision and such assumed findings will not be set aside unless clearly erroneous." *Black-mer v. Williams*, 437 A.2d 858, 861 (Me. 1981).[1]

■ After reviewing the record, we find that the District Court had sufficient evidence before it to determine that it was highly probable that Gail B. was unwilling or unable to take responsibility for her children or to protect them from jeopardy in the form of serious neglect, evidenced by lack of supervision or care. 22 M.R.S.A. § 4055(1)(B)(2)(b)(i), (ii) (Supp.1987); 22 M.R.S.A. § 4002(6)(B) (Supp.1987). The record contains evidence that the children were first taken from Gail B. because they were not being adequately fed, nurtured, cared for, or supervised. To deal with this problem, the Department arranged counseling, parenting specialist services, and parent aide services. Despite these attempts, Gail B. showed limited progress with her parenting skills, particularly concerning child safety and supervision. For example, there was testimony that, even after numerous discussions and warnings by the Department and others about the importance of supervision and safety, she allowed the children, then ages 3 and 4, to go unattended down a cellar stairway that had no railing and had a sheer drop to a cement floor and to play in animal feces in the cellar; she allowed Amanda to wander around outside the apartment complex unsupervised; she allowed Eric to play unattended upstairs banging a metal knife on a charged electrical appliance while she watched television downstairs; and on more than one occasion she allowed food to remain unrefrigerated until it decomposed.

Further, the District Court had sufficient evidence to conclude that the conditions were unlikely to change within a reasonable time to meet the needs of her children. 22 M.R.S.A. § 4055(1)(B)(2)(b)(i), (ii). There was testimony that Gail B. lacked the motivation to change because she saw the source of her problems outside of herself and not within herself. There was also

---

**1.** We note that, although the District Court is not required to issue findings of fact under M.R.Civ.P. 52(a) unless requested by a party, the prudent procedure in parental termination cases is to find the facts separately so as to better inform the parties and this Court of the basis for its decision. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 52.1 at 684 (2d ed.1970). *Cf. In re Sabrina M.,* 460 A.2d 1009, 1013 (Me.1983).

testimony that she did not believe that she needed help with her parenting skills because her behavior was acceptable.

 Finally, the District Court had sufficient evidence before it to determine that it was highly probable that termination of parental rights is in the best interests of both Amanda and Eric. 22 M.R.S.A. § 4055(1)(B)(2)(a). In addition to the evidence presented concerning the safety of both Amanda and Eric and their lack of structure while in the custody of the mother, the record also contained evidence that, particularly with Eric, there is a strong need for structure in order to deal with his extremely active and destructive tendencies. Also the District Court could consider the testimony of an independent psychologist that both children have multiple needs that are not being met and that the longer a final resolution is delayed, the greater the degree of risk to the children. In this respect the psychologist testified that the children should be in a permanent stable home environment, at the latest, by the time they are in the school system. Finally, the District Court could consider the preference for placing children in permanent homes. *See* 22 M.R.S.A. §§ 4003(4), 4050 (Supp.1987). The evidence adequately supports the court's conclusion that termination of parental rights is in the best interest of both Amanda and Eric.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and CLIFFORD and HORNBY, JJ., concurring.

1. I join with the court in emphasizing the desirability of having detailed findings of facts in parental termination cases. It would seem the parties would prefer that this court's review for clear error by the trial court be based on the actual findings of that court rather than the "assumed" findings.

2. In regard to the incident recited in the court's opinion of Eric "banging a metal knife on a charged electrical appliance," the record reveals that a Department caseworker testified that Eric was once found in his room banging a butter knife on a radio or clock radio.

3. 22 M.R.S.A. § 4002(6)(B) (Supp.1977), as applicable to the instant case, defines jeopardy as

GLASSMAN, Justice, dissenting.

I must respectfully dissent.[1] In the first instance the custody of the children was placed with the Department because of Gail's inability to protect them from jeopardy as defined by 22 M.R.S.A. § 4002(6)(B) (Supp.1987). The uncontroverted testimony of the State's witnesses is that, after the State took custody of Amanda and Eric, the children while with Gail were provided with adequate, nutritious meals and appropriate seasonal clothing, and were generally clean. The court focuses on the three incidents[2] contained in the record as the supporting evidence for the trial court's determination that, because of Gail's lack of supervision of the children while in her temporary custody, she was "unwilling or unable to protect [Amanda and Eric] from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the [children's] needs." 22 M.R.S.A. § 4055(1)(B)(2)(b)(i).

I cannot agree that these incidents comprise jeopardy[3] on which the irrevocable termination of a mother's parental rights to her child can be based. Common experience dictates recognition of the fact that in the course of rearing a child there is not a constant of meticulously careful supervision of the child's activities by the person having physical custody of the child. Further, common experience also dictates that isolated incidents of lapses in such supervision do not equate with jeopardy of such a degree as to form the basis for permanent deprivation of a mother's rights of care and

"serious abuse or neglect, as evidenced by: Deprivation of ... supervision or care ... when that deprivation causes a threat of serious harm." Serious harm is defined in section 4002(10) as:

A. Serious injury;

B. Serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior; or

C. Sexual abuse or exploitation.

custody of her child. This becomes self-evident from the record of this case. The trial court had before it uncontradicted testimony that while in the foster home selected by the Department Amanda received facial injuries inflicted by a bite from a dog owned by the foster family and both Eric and Amanda, on different occasions, were seriously burned from hot coffee. It seems a fair conclusion, there being no evidence to the contrary, that a probable contributing cause to these injuries was a lapse in the supervision of the children.

Nor can I agree with the court that there was sufficient evidence before the trial court to determine it was highly probable that termination of parental rights is in the best interests of both Amanda and Eric. 22 M.R.S.A. § 4055(2) (Supp.1987)[4] sets forth those factors that the court *shall* consider in determining whether to terminate parental rights to a child, with no indication but that these factors should be given equal weight in arriving at that determination.

Although the court in its opinion relies heavily on the desirability that the children be permanently placed, there is no evidence in the record of any such plan for the children. There is no evidence that the children had any emotional attachment to any person other than their mother, that the children would be able to integrate into a substitute placement, or of the emotional needs of the children. There is the testimony of the court-appointed psychologist, the Department caseworkers, and a neighbor to Gail, all of whom had observed the interaction of Gail and her children, of the bond of affection and attachment between the children and their mother. Certainly, in considering "the needs of the children," pursuant to section 4055(2), the State should be required to demonstrate by clear and convincing evidence that the consequence to the children of permanently removing from their lives the sole person with whom they are emotionally bonded will not be as severe as allowing the status quo to be maintained.

Accepting all the assumed findings of the trial court on which this court relies, I conclude that the requirements for termination of parental rights have not been met. 22 M.R.S.A. § 4055(1)(B)(2)(a), (b)(i), (ii) (Supp.1987). Accordingly, I would vacate the judgment.

---

**4.** Section 4055(2) provides:
In deciding to terminate, the Court shall consider the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into his parent's home and the child's physical and emotional needs.