## In re CAROLINE M.

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 1990.

Decided June 19, 1990.

Rebecca A. Irving, Machias, for plaintiff.

Norman P. Toffolon, Talbot & Talbot, Machias, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY,* and COLLINS, JJ.

CLIFFORD, Justice.

Shirley M., the grandmother of six-year-old Caroline M., appeals from the order of the Washington County Probate Court (*Holmes, J.*) denying her petition to terminate the parental rights of her daughter, Antoinette M., the child's mother.[1] Because the evidence did not compel the court to conclude that termination was in the child's best interests, we affirm the order.

---

* Hornby, J., participated in the initial conference but resigned before this opinion was adopted.

1. The child's father consented to the petition to terminate his parental rights and is not a party to this appeal. *See* 22 M.R.S.A. § 4055(1)(B)(1) (Pamph.1989).

Shirley M. is a resident of Woodland. Before moving to Maine in June 1985, Shirley provided a home for Antoinette and Caroline in Brockton, Massachusetts where she assisted in caring for Caroline from birth. She eventually assumed primary responsibility for Caroline's care after the child was hospitalized at the age of six months for a failure to thrive. The mother consented to the grandmother's custody of the child and the grandmother was appointed the child's legal guardian and granted legal custody by the Cumberland County Probate Court. This petition to terminate the parental rights of Antoinette M. was brought by the grandmother to facilitate her adoption of the child.[2]

At the hearing, the grandmother gave testimony on the primary concern that prompted her to seek termination, the child's need for a "calm, constant and consistent" environment.[3] The grandmother also testified concerning the mother's minimal efforts to stay in contact with the child. Except for two short visits in 1985, the mother had failed to visit, write or make telephone contact until the petition was brought. There was evidence that the child expressed little interest in her birth mother and called the grandmother "mummy" despite understanding their true relationship. The mother disputed much of the grandmother's testimony concerning the relationship between herself and the child and indicated that her recent efforts towards resuming contact with the child were prompted by an improvement in her own circumstances rather than the filing of the petition for termination of parental rights.

The Probate Court found that the mother had been unwilling and unable to take responsibility for the child and that the mother had abandoned the child.[4] 22 M.R.S.A. § 4055(1)(B)(2)(b)(ii), (iii) (Pamph.1989). Though the court noted that the mother had only "the most fleeting contact" with the child, it found that the evidence presented was insufficient to support a finding that termination was in the child's best interests and denied the grandmother's petition. *Id.* § 4055(1)(B)(2)(a).

■ Pursuant to 22 M.R.S.A. § 4055(1)(B)(2),[5] parental rights may be terminated only when there is clear and convincing evidence in support of the required findings. *In re Hope H.*, 541 A.2d 165, 166 (Me.1988). When clear and convincing evidence is required, the court must be persuaded of the necessary factual findings to a high probability. *Id.* Because the grandmother had the burden to convince the court of the findings required under section 4055(1)(B)(2), the court's denial of the peti-

---

**2.** 22 M.R.S.A. § 4055(1)(A)(2) (Pamph.1989) provides that a petition for termination may be sought in connection with an adoption proceeding.

**3.** The grandmother testified that the child manifested subtle signs of a low attention span and distractibility and activity levels that might be indicative of learning disabilities. She offered no expert testimony on the matter, however, and admitted that this diagnosis was uncertain given that three separate evaluations of the child produced varying conclusions. She noted that the child, who had attended a special needs pre-school and who was about to repeat kindergarten, received "therapy" aimed at physical and cognitive development. When further questioned on the nature of that therapy, the grandmother explained that it consisted of measures designed to keep the child's attention focused.

**4.** On appeal, the mother contests each of these findings while the grandmother maintains that the court erred in not making the additional finding that the mother was unwilling or unable

to protect the child from jeopardy. 22 M.R.S.A. § 4055(1)(B)(2)(b)(i). Given our disposition of this appeal, it is unnecessary for us to address these contentions.

**5.** 22 M.R.S.A. § 4055(1)(B)(2) provides that termination may be ordered if

(2) The court finds, based on clear and convincing evidence, that:

(a) Termination is in the best interest of the child; and

(b) Either:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child. . . .

tion will be upheld on appeal unless the evidence compels the court to find all the statutory requirements to a high probability. *Cf. Town of Eustis v. Stratton–Eustis Dev. Corp.*, 516 A.2d 951, 953 (Me.1986) (principle applied against Town in unsuccessful suit to establish constructive trust). *See In re Misty Lee H.*, 529 A.2d 331, 333 (Me.1987); *In re John Joseph V.*, 500 A.2d 628, 629 (Me.1985).

■ The grandmother contends that the court's findings on the mother's abandonment and failure to take responsibility are dispositive of a finding that termination is in the child's best interests. We disagree. "Both the statute and our case law make clear that ... best interests [is a] distinct element[ ] that must be proved independently." *Hope H.*, 541 A.2d at 166. While the court's findings on abandonment and failure to take responsibility are relevant to the best interests inquiry, *see In re Jason B.*, 552 A.2d 9, 11 (Me.1988); *Hope H.*, 541 A.2d at 166 & n. 5, the court was also required to consider the needs of the child, set forth by statute to include

the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into his parent's home and the child's physical and emotional needs.

22 M.R.S.A. § 4055(2). The grandmother had the burden to prove by clear and convincing evidence that termination of the mother's parental rights was in the child's best interests. *Hope H.*, 541 A.2d at 167. Recognizing the unique opportunity of the trial court to assess the evidence, *Misty Lee H.*, 529 A.2d at 333, we cannot say that the court was compelled to find to a high probability that termination was in the child's best interests. *Id.; John Joseph V.*, 500 A.2d at 629.

The entry is:

Order denying petition for termination of parental rights affirmed.

All concurring.