**In re ANGEL B., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 31, 1995.

Decided May 30, 1995.

Robert F. Ward, David J. Edgar, Houlton, for appellant.

John H. Hawkes, Asst. Atty. Gen., Augusta, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Joyce B. and Ralph B., the parents of Angel, Christine, Brandy, and Gauge, appeal separately from the judgment of the District Court (Houlton, *Griffiths, J.*) terminating their parental rights. The record contains clear and convincing evidence to support the statutory bases for termination. We affirm the judgment.

## I.

■ A court must find parental unfitness according to one of the four statutory factors before determining whether termination is in the best interest of the children.[1] *In re Leona T.,* 609 A.2d 1157, 1158 (Me. 1992). The court found present jeopardy stemming from prior parental abuse and neglect. The jeopardy refers to the children's "developmental delays, significant behavioral problems, and essential need for a consistent and structured environment." This under-

standing of jeopardy is consistent with 22 M.R.S.A. §§ 4002(6)(A) and (10)(B) (1992). Section 4002(6)(A) provides that evidence of "serious harm or threat of serious harm" may constitute jeopardy. Section 4002(10)(B) defines serious harm as "[s]erious mental or emotional injury or impairment, which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar dysfunctional behavior."

The trial court had evidence of physical abuse, evidence of profound behavioral and emotional problems exhibited by each of the four children, evidence that some of the problems are abating, and evidence that the visitations with Joyce and Ralph were counterproductive to attempts to provide the children with stability and consistency. The court reasonably could conclude that the evidence supported a finding that it was highly probable that the severe problems exhibited by these children stemmed in at least significant part from their early years with Joyce and Ralph. The evidence further supported findings that the circumstances were unlikely to change within a time reasonably calculated to meet the needs of the children, that the visitations had been detrimental to efforts to provide the children with stability and that Joyce and Ralph had been unable or unwilling to learn or adopt the parenting skills that would make the visitations less chaotic.

## II.

The court determined that termination was in the best interests of the children. *See In re Caroline M.,* 576 A.2d 743, 745 (Me.1990). "In deciding to terminate, the court shall consider the needs of the child, including the

---

1. 22 M.R.S.A. § 4055 (1992) provides in pertinent part that a court may order termination of parental rights if custody has been removed from the parent pursuant to one of several statutory provisions, in this case, 22 M.R.S.A. § 4035, and either the parent consents to the termination or:

  (2) The court finds, based on clear and convincing evidence, that:

    (a) Termination is in the best interest of the child; and

    (b) Either:

      (i) The parent is unwilling or unable to protect the child from jeopardy and these cir-

cumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

      (ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

      (iii) The child has been abandoned; or

      (iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into his parent's home and the child's physical and emotional needs." 22 M.R.S.A. § 4055 (1992). The court most clearly based its best interest determination on the children's physical and emotional needs, specifically their need for "a stable home environment" and for "nurturance, structure and permanency."

We are mindful of the fact that the Department of Human Service's (DHS) management of a case can create its own best arguments for termination. *See In re Justin T.*, 640 A.2d 737, 739 (Me.1994) (advocating caution when DHS uses the lack of a normal parent-child relationship as support for termination when the parents' contact with the children has been restricted as a result of child protective proceedings initiated by DHS). All relevant parties in this case acknowledge that the separation of the children from their parents and the transience of their foster care placements have contributed to the problems they exhibit and that it is highly probable that all four are destined for another transition.

■ The trial court faced the limited choice between termination and the eventual return of the children to their parents. Given the overwhelming testimony about the detrimental effect of the visitations on the attempts by DHS and the various foster families to stabilize the lives of these children, and the evidence as to the lack of progress made by Ralph and Joyce, the court could reasonably conclude that termination was in the best interest of the children.

## III.

■ Joyce contends DHS violated the Americans with Disabilities Act [2] by failing to offer her services specifically tailored to her cognitive skills [3]. The ADA provides in part that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (Pamph.1995). Joyce, however, fails to demonstrate that DHS failed to offer her certain services or that it offered her services that were not as effective in affording her equal opportunity to rehabilitate and reunify with her children *on the basis of her disability*.[4] The record discloses the contrary. DHS offered a number of services that took Joyce's pace and cognitive skills into account.

■ Her contention that the statute as applied to retarded persons violates the equal protection guarantees of the United States [5] and Maine [6] Constitutions is without merit.

The entry is:

Judgment affirmed.

All concurring.

2. 42 U.S.C.A. §§ 12101–12213 (Pamph.1995).

3. Dr. John Hale, a psychologist, testified that he tested Joyce to determine her level of cognitive functioning. He said the results were in the range of "borderline or mild mental retardation."

4. 28 C.F.R. § 35.130 (1994) provides in pertinent part:

(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

(b)(1) A public entity, in providing any aid, benefit, or service, may not, directly, or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.

5. U.S. Const. amend. XIV, § 1.

6. Me. Const. art. I, § 6–A.