## In re DEAN A.

Supreme Judicial Court of Maine.
Argued Nov. 13, 1984.
Decided April 26, 1985.

Suian C. Thiem (orally), Lincolnville, for plaintiff.

Diane E. Doyen, Asst. Atty. Gen., Human Services Div. (orally), Augusta, for defendant.

Moser & Mailloux, Randolph Mailloux (orally), Belfast, Guardian Ad Litem.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

Ruth A., the mother of Dean A., appeals from a judgment of the Superior Court (Waldo County) affirming an order of the District Court (Belfast) terminating her parental rights pursuant to 22 M.R.S.A. § 4055 (Supp.1984–1985).[1] On appeal she contends that the District Court judgment must be vacated because that court employed an inappropriate standard of proof. Alternatively, she argues that the evidence is insufficient to establish the grounds for termination. We find no error and we deny the appeal.

### I.

Dean A. was born February 12, 1978, as the first son of his parents' marriage. When he was about four months old, he was severely injured by his father. As a result of this incident, in July of 1978, the Department of Human Services (the Department) successfully petitioned for an order for protective custody and Dean A. was placed in a foster home, where he remains to this date. The father continued to reside in the family home until August of 1979 when he was sentenced to prison for the assault on his son. Ruth A. lived with her husband throughout this period of time and conceived two more sons with him before he entered prison. The father remained incarcerated until March of 1981 and during his incarceration she visited him regularly and attended counseling sessions aimed at reuniting with him. After her husband was released from prison and had lived with her for about a week, she asked him to leave because of his temper and his lack of employment. In December of 1981 she obtained an order against him protecting her from abuse and, finally, in July of 1982 she obtained a legal separation.[2]

In June of 1981 Ruth A. filed a petition seeking the exclusive care and custody of Dean A., which petition was continued from day to day to permit the psychological evaluation of Ruth A. and her three other children. Ultimately, her petition was consolidated with the Department's petition for termination of parental rights. The District Court granted the petition for termination and the Superior Court affirmed. It is this order which forms the basis for the mother's appeal.

### II.

Initially, the mother argues that the District Court applied the wrong standard of proof. Under 22 M.R.S.A. § 4055(1)(B)(2) the grounds for termination of parental rights are required to be established by clear and convincing evidence. The mother notes that the District Court judgment in this case, was issued prior to our decision in *Taylor v. Commissioner of Mental Health and Mental Retardation*, 481 A.2d 139 (Me.1984) overruling *Horner v. Flynn*, 334 A.2d 194 (Me.1975). It is her position that the District Court found the grounds for termination on the basis of a preponderance, supported by a better quality of evidence, rather than through the application of an intermediate standard of proof as required by *Taylor*.

In *Taylor* this Court abandoned the formulation of clear and convincing evidence announced in *Horner*. We adopted the definition, "by which the party with the burden of persuasion may prevail only if he can 'place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are "highly probable".'" *Taylor v. Commissioner of Men-*

---

1. The father of Dean A. was a party before the District Court, and the order also terminated his parental rights. Prior to the hearing in Superior Court the father withdrew his appeal with leave of court and his case is not before us.

2. The District Court found that the father had a long history of psychiatric disorders and was likely to exhibit violent behavior under stress.

The father was diagnosed as suffering from schizophrenium disorder and anti-social personality. Because of his failure to participate in counseling his prognosis was very unfavorable. The father's continued presence in the home and his anticipated return after serving his sentence, hindered the Department's reunification efforts during the first two years.

*tal Health and Mental Retardation,* 481 A.2d at 153, quoting *Colorado v. New Mexico,* — U.S. —, —, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247 (1984). The *Horner* formulation was found to be inadequate, not because it failed to convey to the fact finder the necessity for a higher degree of certainty, but because it removed the "higher standard of proof aspect of the lower court's factual findings from appellate review." Id. at 153. No prejudice will result to the mother in the present case, if the court's findings are subjected to the enhanced appellate scrutiny afforded by *Taylor.*

### III.

A consideration of the merits of this appeal presents an all too familiar factual setting. Dean A. was severely traumatized, both physically and psychologically, at the age of four months. Through the process of protective custody he has now lived with his foster parents for more than six years with only occasional visits from his natural mother. The District Court found that Dean A. has made great developmental progress while living with his foster parents, whom he regards as his natural parents. He is loved and well cared for, and the foster parents wish to adopt him. The court found further, based on expert testimony, that to remove Dean A. from the home would be an extremely traumatic experience for him, likely to result in developmental regression of serious magnitude. The court concluded that the mother is unable to protect her son from jeopardy "because the bonding which has developed between Dean and his foster parents makes his removal from the home a threat to his health and welfare by mental injury or impairment." Finding that the circumstances were unlikely to change in a reasonable time, and that termination was in the child's best interest, the court ordered termination.

■ Understandably, the mother contends that the child is no longer in jeopardy. She admits that in the past she was unable to protect her son from his father, but with the removal of the husband from the home and the legal separation, she argues that the risk is no longer present. She contends that, in reality, the court found only that her son's best interests would be served if he stayed with his foster parents, not that he would be in jeopardy if returned to her. In her view, the jeopardy which would result from reunification results from the prolonged term of foster care. She argues the Department is using her lack of parenting resources as a cover for denying reunification on the actual ground that she is poor and the foster parents are middle class. If this were true, her point would be well taken. In the absence of the statutory grounds, the child's relative economic advantage in the foster home provides no basis for terminating the rights of the natural parents, no matter how unfortunate their circumstances might be. We have all witnessed many examples of exemplary parenting in what would appear to be economically disadvantaged homes.

■ It is not possible, however, for this Court to accept the contention that the father is the sole source of jeopardy. Such a view would be at odds with the law and would fail to accommodate the complex of facts presented in this case. Jeopardy includes not only the threat of serious physical injury but also "[s]erious mental injury or impairment, evidenced by severe anxiety, depression or withdrawal, untoward aggressive behavior or similar dysfunctional behavior; ...." 22 M.R.S.A. § 4002 (10)(B). Each of the mental health professionals who examined Dean A. testified that he could suffer serious psychological injury if he were taken from his foster home and returned to his mother. One of the psychiatrists testified expressly that jeopardy would result not only because Dean A. had grown attached to his foster parents, but also because he has special needs resulting from the history of abuse and inadequate parenting. The witness testified, and the court found that the

mother was incapable of meeting the special needs of Dean A. In short, the District Court found that this youngster had been severely traumatized and that reunification with the mother would involve a substantial risk of permanent injury. Under optimum circumstances, the likelihood of a successful reunification was found to be uncertain. The court concluded that the mother's circumstances fell "far short of the optimum" and that her "limitations in understanding and ability would almost certainly doom any future attempted reunification effort." The record before us adequately supports the conclusion that it is highly probable that the mother is unable to protect Dean A. from the jeopardy resulting from the incident of abuse early in his life and unable to fill the special needs produced by that incident.

The entry is:

Judgment affirmed.

All concurring.