### In re CHESLEY B. et al.

Supreme Judicial Court of Maine.

Argued Sept. 6, 1985.

Decided Oct. 7, 1985.

Gerard P. Conley, Jr. (orally), Portland, for plaintiff.

Christine Foster (orally), James Eastman Smith, Augusta, Bowie & Parker, Susan Bowie (orally), Naomi Honeth, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Mary B., mother of Chesley B. and Gerald B., appeals an order of the District Court (Portland) terminating her parental rights pursuant to 22 M.R.S.A. § 4055 (Supp.1984–1985).[1] The sole issue that she raises is whether the whole record contains evidence of the quantum that is required, constitutionally and statutorily, for termination of parental rights. Specifically, she asks us to review the District Court's finding that, based on clear and convincing evidence, she is unwilling or unable to take responsibility for her children within a time reasonably calculated to meet their needs.[2] That finding must stand unless it is clearly erroneous. M.D.C.Civ.R. 52(a).

■ In the order on appeal, subsidiary findings of fact were neither requested by counsel under M.D.C.Civ.R. 52(a) nor volunteered by the District Court. As always,

---

1. 22 M.R.S.A. § 4055 provides in pertinent part:
   The court may order termination of parental rights if:

   .   .   .   .   .

   [B](2) The court finds, based on clear and convincing evidence, that:
   (a) Termination is in the best interest of the child; and

   .   .   .   .   .

   (ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

   . . . .

2. On her appeal Mary does not question that the record supports the District Court's finding, also required by section 4055, that termination of parental rights is in the best interests of the children.

we leave to the trial judge questions of credibility and weight to be given testimony; he alone has had the opportunity to observe the witnesses. *Tonge v. Waterville Realty Corp.*, 448 A.2d 902, 905 (Me. 1982). We examine the whole record to see whether the trial court could rationally have found the requisite quantum of evidence, in the present case "clear and convincing evidence," to support his factual conclusion. *See Taylor v. Commissioner of Mental Health and Mental Retardation*, 481 A.2d 139, 154 (Me.1984) ("clear and convincing evidence" defined as that which establishes a factual conclusion to be "highly probable"). In the absence of detailed findings, we must assume that the trial judge resolved favorably to the Department of Human Services (Department) all facts necessary to support his decision to grant its petition. *See Conover v. Conover*, 403 A.2d 352, 353–54 (Me.1979). The limitations on our appellate function, therefore, require us to deny the appeal if any evidence in the record can rationally be read to establish as highly probable the District Court's factual conclusion that Mary is unwilling or unable to take responsibility for her young sons within a time to meet their needs. Finding that support in the record before us, we affirm.

Chesley and Gerald, who are now 6½ and 3⅓ years of age, respectively, have spent most of their lives in the care of the Department. Mary voluntarily placed Chesley in the Department's foster care program soon after his first birthday. Following a temporary protective custody order entered in July 1981, the District Court (Portland) on November 10, 1981, entered a child protection order pursuant to 22 M.R.S.A. §§ 4035, 4036 (Supp.1984–1985) granting full custody of Chesley to the Department. Less than seven months later Gerald was born and, at Mary's request, left the hospital in the arms of a foster mother. He has never lived with Mary. On April 27, 1983, the District Court (Portland) entered a child protection order granting full custody of Gerald to the Department. Mary consented to the entry of both protection orders. On October 2, 1984, the Department petitioned for termination of all parental rights so that the boys could be placed for adoption. Of Mary and the children's putative fathers, only Mary appeals the District Court's termination order.

The District Court heard substantial evidence tending to show that Mary was unwilling or unable to carry out the most basic parental responsibilities. During the period the children lived with a foster family in the Munjoy Hill area of Portland, Mary, though living in the same city, went to see them only infrequently and often missed prearranged visits. Later, after the boys had been moved to a foster home in Yarmouth, Mary limited her contact with the children to occasional visits made only when her caseworker would drive her there. As a result of her erratic and infrequent visits, Mary never fully established a mother-child relationship with Gerald. Often Mary promised but failed to make scheduled visits, even though she knew that her missing those appointments sent Chesley into temper tantrums. At the foster home and with her parenting counselor, Mary failed to demonstrate an awareness of the most rudimentary requirements of child care, such as nutrition and safety, or an ability or willingness to cope with her children's emotional needs. Moreover, since 1980 Mary has left her children in the care of the Department while she drifted between Portland hotels and other transient living arrangements. At times her roommates could be violent; always her living circumstances were precarious. Although her caseworkers repeatedly instructed Mary that establishing a stable home was essential to the well-being of her children and therefore a prerequisite for family reunification, Mary never came close to establishing a suitable home. Instead Mary continued to move between hotels and the living accommodations of friends until finally she rented an adequate apartment, but in a building that prohibited children.

Mary's reaction to the Department's efforts to reunite her with her children buttresses the District Court's order. *See In re Crystal S.*, 483 A.2d 1210, 1212 (Me. 1984) ("the Department's efforts, or lack thereof, are a factor to be considered in evaluating the parents' conduct"). While foster parents cared for her children, caseworkers kept Mary apprised of her parental responsibilities and of the resources, such as housing assistance and transportation for visits to the children's foster home, that were available to help her meet those responsibilities. A vocational specialist found Mary jobs and job training. A parenting counselor instructed her on the children's needs and tried to help her develop parenting skills. Mary responded to each of these efforts with ambivalence, if not apathy. She missed appointments for counseling and job training. She also failed to maintain any regular contact with either her caseworkers or her children. Although the Department could not pay her rent, it assisted her in seeking suitable housing and encouraged her to apply for a housing subsidy from the City of Portland. For nearly a year and a half before the termination proceeding, Mary chose to live with a boyfriend in an apartment where, because the landlord would not accept children, family reunification was impossible. Considering all this evidence, the District Court rationally could have found that further reunification efforts would be futile within a time reasonably calculated to meet the children's needs.

Viewing the extensive District Court record in the light most favorable to the Department, we conclude that the trial judge could rationally have found therein evidence that established as highly probable the factual conclusions necessary for termination of Mary's parental rights. Since therefore the District Court's findings were not clearly erroneous, the entry is:

Judgment affirmed.

All concurring.