## In re JEFFREY E.

Supreme Judicial Court of Maine.

Argued March 21, 1989.

Decided April 25, 1989.

death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.

David W. Austin (orally), Rumford, for respondent-appellant.

Bruce N. Shibles (orally), Augusta, for Dept. of Human Services.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Linda and James E., the parents of Jeffrey E., appeal from an order of the District Court (Rumford; *Batherson, A.R.J.*) terminating their parental rights pursuant

17–A M.R.S.A. § 251(1)(E) (1983).

to 22 M.R.S.A. § 4055 (Supp.1988). On appeal they contend the District Court's termination order is not supported by clear and convincing evidence. We affirm the District Court.

At the hearing on a petition filed by the Department of Human Services (Department) for the termination of the parental rights of Linda and James E., the District Court would have been warranted in finding the following facts.

Jeffrey E. was born on February 1, 1984 to Linda and James E. He has three brothers who currently reside with Linda and James. Linda is the primary caretaker of the children, while James is an unusually passive parent who contributes virtually nothing toward the care of the children and does not assist in performing any household duties.

Jeffrey suffered from pneumonia and was hospitalized several times in 1984 and 1985. In the spring of 1985, Jeffrey was hospitalized and spent time in a Boston hospital with pneumonia and a collapsed lung. When he returned home, he was put on a regimented treatment program that was essential for a healthy recovery. Linda and James, however, were unable to follow through with providing the medications and therapies ordered by Jeffrey's physician, even with the help of a nurse from Androscoggin Home Health Associates. Consequently, Jeffrey became ill and had to be hospitalized again.

In July of 1985, Jeffrey was temporarily removed from his parents' home and placed in foster care, see 22 M.R.S.A. § 4034 (Supp.1988), and in 1986, after a hearing on the Department's Petition for a Final Protection Order, the District Court found Jeffrey to be in circumstances of jeopardy to his health and welfare should he be returned to the custody of his parents and awarded custody to the Department. See 22 M.R.S.A. §§ 4035, 4036 (Supp.1988).

When he arrived at the foster home, Jeffrey was seventeen months old; he spoke only two words; he was unable to understand simple sentences; and he was not using a cup or spoon. After a great deal of work and attention, Jeffrey's medical condition improved and he advanced developmentally. Within a few days in the foster home, he was able to close his mouth enough to drink out of a cup. He was walking within six weeks and had increased his vocabulary from two to thirty words within three months of his arrival at the foster home. His medical condition improved with his foster mother's strict attention to the complicated medical instructions.

The Department pursued three reunification plans, in the form of written service agreements, in accordance with 22 M.R.S.A. § 4041 (Supp.1988). The reunification plans addressed three areas of concern: the family's health, the discipline and structure in the home, and the formulation of ways to stimulate the learning and development of Jeffrey. Because Linda and James did not comply with the terms of the agreement and the Department's service providers did not see any improvement in Linda's or James' parenting abilities, the Department discontinued reunification efforts in October of 1987 and petitioned the court for termination of the parental rights of Jeffrey's parents. See 22 M.R.S.A. § 4052 (Supp.1988). After a hearing in June 1988, the District Court ordered that the parental rights of Linda and James be terminated. This appeal followed.

## I.

Pursuant to the requirements for the termination of parental rights set out in 22 M.R.S.A. § 4055,[1] the court found by clear

---

1. Pursuant to 22 M.R.S.A. § 4055 (Supp.1988), parental rights may be terminated if the court finds by clear and convincing evidence that:
   (a) Termination is in the best interest of the child; and
   (b) Either:
   (i) The parent is unwilling or unable to protect the child from jeopardy and these

circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;
   (ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;
   (iii) The child has been abandoned; or

and convincing evidence that the parents were unwilling or unable to protect Jeffrey from jeopardy and that those circumstances were unlikely to change within a time which is reasonably calculated to meet the needs of Jeffrey (22 M.R.S.A. § 4055(1)(B)(2)(b)(i)), and that they were unwilling or unable to take responsibility for Jeffrey within a time which is reasonably calculated to meet his needs (22 M.R.S.A. § 4055(1)(B)(2)(b)(ii)). In addition, the court found that Linda and James had failed to make a good-faith effort to rehabilitate and reunify with Jeffrey pursuant to 22 M.R.S.A. § 4041 (22 M.R.S.A. § 4055(1)(B)(2)(b)(iv)). The court also made the requisite finding that termination of the parental rights of Linda and James was in the best interest of Jeffrey. 22 M.R.S.A. § 4055(1)(B)(2)(a).

■ In reviewing the District Court's findings, we examine the entire record to determine whether the court rationally could have found clear and convincing evidence in support of its factual conclusions. *In re Misty Lee H.*, 529 A.2d 331, 333 (Me.1987). When clear and convincing evidence is required, we review whether the factfinder could reasonably have been persuaded that the required factual findings were proved to be highly probable. *Id.; In re John Joseph V.*, 500 A.2d 628, 629 (Me. 1985); *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153 (Me.1984).

■ A finding of jeopardy may be based on the parents' inability to meet a child's special needs. *In re Dean A.*, 491 A.2d 572, 574–75 (Me.1985). These needs may be developmental, *id.*, and they may include health care. 22 M.R.S.A. § 4002(6)(B).[2] Linda and James contend that it was improper for the court to consider their inability to provide medical attention to Jeffrey because Jeffrey was in

good health at the time of the termination proceeding. We disagree.

■ In order for a court to take into account the special medical needs of a child, a present medical emergency need not exist, nor does such a medical emergency have to be imminent or even certain to recur. The evidence in this case disclosed that, because of past medical history, Jeffrey was susceptible to medical problems that parents with average skills easily would be able to treat at home, but that Linda and James clearly would be unable to cope with. According to a nurse who worked closely with the family for three years, Linda and James have not improved at all in their ability to provide medical care for themselves or their children. Indeed, Linda testified that she does not force her children to take medications, and does not even have a thermometer in her home. Moreover, in the years between Jeffrey's placement in foster care and the current termination proceeding, Linda did not properly seek medical care for herself when she had pneumonia, or for her youngest son to alleviate his numerous upper respiratory ailments.

In addition to Jeffrey's special medical needs, there was evidence as to his special developmental needs. A psychologist testified that Jeffrey is much more dependent on stimulation from his environment than the average child in order to develop intellectually. Without constant intensive encouragement Jeffrey would regress and fall behind his peers. According to the testimony of the service providers who worked with the family, the home of Linda and James E. would not provide such a nurturing atmosphere. The testimony established that Linda and James did not appropriately discipline their children, did not provide intellectual stimulation in their home and provided their children with a home environment that the court justifiably

---

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

2. 22 M.R.S.A. § 4002(6)(B) (1988) provides: "Jeopardy to health or welfare" or "jeopardy" means serious abuse or neglect as evidenced by:

....

B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm.

found to be chaotic. For example, Linda testified that "the arguing and fighting gets sickening when it happens every day." Service providers further testified that in response to kicking, screaming and hitting among the boys in the household, Linda would scream and swear at the children.

Given the special medical and developmental needs of Jeffrey, we conclude that the District Court could reasonably have been persuaded that it was highly probable that Linda and James were unable to protect Jeffrey from jeopardy and unable to take responsibility for him within a time which is reasonably calculated to meet the child's needs. *Dean A.*, 491 A.2d at 574–75. Having found that the District Court was justified in finding that Linda and James E. were unable to protect their child from jeopardy and take responsibility within a time reasonably calculated to meet the child's needs, we need not and do not address the court's determination that the parents failed to make a good-faith effort to rehabilitate and reunify with the child, an alternative ground for terminating the parental rights of Linda and James. *See In re Randy Scott B.*, 511 A.2d 450, 455 (Me.1986) (under 22 M.R.S.A. § 4055(1)(B)(2)(b), court's findings of inability to protect from jeopardy and to take responsibility for child are each independently adequate to justify termination).

We further conclude that there was substantial evidence on the record, including evidence of the inability of Linda and James to protect Jeffrey from jeopardy or to take responsibility for him, *see In re Jason B.*, 552 A.2d 9, 11 (Me.1988), to reasonably persuade the court that it was highly probable that termination of the parental rights was in the best interest of Jeffrey. *In re Joseph P.*, 532 A.2d 1031, 1034–35 (Me.1987); 22 M.R.S.A. § 4055(2).

The entry is:

Judgment affirmed.

All concurring.