## In re PETER M.

Supreme Judicial Court of Maine.

Submitted on briefs Jan. 8, 1992.
Decided Feb. 11, 1992.

**1162**

Michael E. Goodman, Bangor, Thomas J. Byrne, Jr., New Orleans, La., for appellant.

Kenneth L. Jordan, Jr., Thomas F. Shehan, Jr., Bangor, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Charity M., the mother of Peter M., appeals from the judgment of the Piscataquis County Probate Court (*Smith, J.*) terminating her parental rights pursuant to 22 M.R.S.A. § 4055 (Pamph.1991). She contends that the Probate Court erred in concluding that she had been unwilling or unable to take responsibility for Peter within a time reasonably calculated to meet his needs, and that termination of her parental rights was in Peter's best interest. We discern no error and affirm the judgment.

Charity M. was sixteen years old and unmarried at the time of Peter's birth in 1979 in Portland. Shortly after the birth, she requested Joy Buzzell, the petitioner in this case,[1] to care for the child. Buzzell understood that her custody of Peter was to be a permanent arrangement. The child has in fact been with her ever since.[2]

As part of an effort to adopt Peter, *see* 19 M.R.S.A. §§ 531–538 (1981 & Supp. 1991), Buzzell petitioned the Piscataquis County Probate Court pursuant to 19

---

1. At that time, Joy Buzzell's sister was married to Charity's brother.

2. Buzzell and the child moved to Florida shortly after Charity requested that Buzzell care for Peter. Buzzell and the child also lived briefly in Colorado and now reside in Maine.

M.R.S.A. § 533–A[3] to terminate the mother's parental rights.[4] After three days of hearing, the court granted the petition and terminated Charity's parental rights. The court found by clear and convincing evidence that Charity has been unwilling or unable to take responsibility for Peter within a time reasonably calculated to meet his needs, and that termination is in Peter's best interest. This appeal by Charity, *see* 22 M.R.S.A. § 4006 (Pamph.1990), followed the court's denial of her motion for further findings of fact. *See* M.R.Prob.P. 52 (providing that probate proceedings are governed by M.R.Civ.P. 52).

In considering a petition to terminate parental rights in conjunction with an adoption proceeding, the Probate Court is governed by 22 M.R.S.A. §§ 4051–4057. *See* 22 M.R.S.A. §§ 4055(1)(A)(2). Section 4055(1)(B)(2) provides that termination may be ordered only if the court makes certain requisite findings based upon clear and convincing evidence. Among those findings, and the findings on which the Probate Court based its termination order in this case, are that "[t]he parent has been unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs, ..." 22 M.R.S.A. § 4055(1)(B)(2)(b)(ii), and that "[t]ermination is in the best interest of the child...." 22 M.R.S.A. § 4055(1)(B)(2)(a).

■ On review, this court must examine the entire record to determine whether the court rationally could have found clear and convincing evidence to support its factual conclusions. *In re Misty Lee H.*, 529 A.2d 331, 333 (Me.1987). The appropriate standard is " 'whether the factfinder could reasonably have been persuaded that the required factual findings [were] proved to be *highly probable.*' " *In re John Joseph V.*, 500 A.2d 628, 629 (Me.1985) (quoting *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153 (Me.1984) (emphasis in original)). Due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses and its findings should not be set aside unless clearly erroneous. *In re Chesley B.*, 499 A.2d 137, 138–39 (Me.1985).

■ Our review of the record discloses no clear error in the Probate Court's finding by clear and convincing evidence that Charity has been unwilling to take responsibility for Peter within a time reasonably calculated to meet his needs. We have previously defined (albeit in *dicta*) "unwillingness" as used in section 4055(1)(B)(2)(b)(ii) as a "mental state tending to show lack of disposition or inclination to take such responsibility." *John Joseph V.*, 500 A.2d at 630. Charity, despite being in contact with members of her own family who knew Peter's whereabouts, and being informed of these whereabouts when she inquired, had no contact with the child until he was about eight years old, and then only minimal contact when she would send some gifts and toys to him. She made no attempt to gain custody of Peter and offered no support of him. The Probate Court could find to a high probability that Charity, by her years of virtual inactivity as a parent, showed herself to be unwilling to take responsibility for her son within a time reasonably calculated to meet his needs. *See In re Shane T.*, 544 A.2d 1295, 1298 (Me.1988).

■ Some of the factors to be considered by the court when determining whether termination is in the best interest of the child, include the child's age, the child's attachment to relevant persons, periods of attachment and separation, the child's ability to integrate back into the parent's home, and the physical and emotional needs of the child. 22 M.R.S.A. § 4055(2). Peter, now twelve years old, has been in the exclusive care of Buzzell

**3.** 19 M.R.S.A. § 533–A (Supp.1991) provides in pertinent part:

    **1. Jurisdiction.** A petition for termination of parental rights may be brought in Probate Court as part of an adoption petition when a child protection petition has not been initiated.

**2.** Except as otherwise provided by this section, a termination petition is subject to the provisions of Title 22, [sections 4051–4057].

**4.** The father of the child is unknown.

since infancy. She is the only parent he has known and he has thrived in her custody. The evidence indicates that Peter is a healthy, happy, and well-adjusted child. Charity has had virtually no contact with him; he has never lived in her home, and no mother-child relationship has developed between them.

Unlike a case when custody has been removed from the parent by court order, denial of the petition for termination in this case would likely mean that Peter would be uprooted and be required to live with his mother in Louisiana. Moreover, in deciding the issue of what is in Peter's best interest, the court could take into consideration Charity's long history of being unwilling to take responsibility for Peter. *See In re Jason B.*, 552 A.2d 9, 11 (Me.1988). While the court's order could have more specifically addressed its findings as to the best interest issue, *see In re Amber B.*, 597 A.2d 937, 938 (Me.1991); M.R.Civ.P. 52(a), the evidence amply supports a finding that it is highly probable that termination of Charity's parental rights was in Peter's best interest. *In re Jeffrey E.*, 557 A.2d 954, 957 (Me.1989); *In re Joseph P.*, 532 A.2d 1031, 1034–35 (Me.1987).

Charity's final contention, that the court improperly considered the report of the guardian ad litem, is without merit and requires no discussion.

The entry is:

Judgment affirmed.

All concurring.