**In re ELIJAH R.**

Supreme Judicial Court of Maine.

Submitted on briefs Jan. 5, 1993.

Decided Feb. 4, 1993.

---

N. Paul Gauvreau, Gauvreau & Blackburn, Lewiston, for appellant.

Lou Ann Clifford, Asst. Atty. Gen., Dept. of Human Services, Portland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Robin R., mother of Elijah R.,[1] appeals from the order entered in the District Court (Lewiston, *Beliveau, J.*) terminating her parental rights pursuant to 22 M.R.S.A. § 4055 (1992). Robin contends that the record does not support, by clear and convincing evidence, the court's findings that she is unable to protect Elijah from jeopardy, that she is unwilling or unable to take responsibility for Elijah, that she failed to make a good faith effort to rehabilitate or reunify with her son, and that termination of her parental rights is in the best interest of Elijah. Robin also argues that the court erred in admitting over objection her medical records from the Augusta Mental Health Institute (AMHI) and the testimony of Elijah's pediatrician regarding the relationship between Elijah and his foster mother. We disagree and affirm the judgment.

Elijah R. was born on November 30, 1990. Prior to and after his birth his mother, Robin R., was an involuntary patient at AMHI undergoing treatment for paranoid schizophrenia. On December 3, 1990, the Maine Department of Human Services (Department) filed a petition for a child protection order pursuant to 22 M.R.S.A. §§ 4034 & 4036 (1992). The petition alleged that Elijah was in jeopardy due to Robin's abuse of alcohol and drugs, her psychiatric illness, and her refusal to take her anti-psychotic medication. The petition was granted the same day it was filed and the Department was granted temporary custody of Elijah. Elijah was placed in a foster home where he still resides. The District Court (Lewiston, *Gorman, J.*) entered a final protection order on March 6, 1991. The order provided that Robin was to follow recommendations of substance abuse and mental health counselors, maintain sobriety, take her medication, attend scheduled visits with Elijah, and demonstrate the ability to maintain a stable lifestyle.

Robin was initially allowed supervised visits with Elijah three times a week during periods when she was not hospitalized. Visits were reduced to once a week in November 1991 after the Department decided to discontinue reunification efforts due to Robin's failure to comply with treatment plans of mental health and substance abuse counselors and to maintain sobriety. Robin has a long history of mental illness and substance abuse. She has been diagnosed as a chronic paranoid schizophrenic and has been hospitalized for these problems over the past year in various institutions including AMHI, Jackson Brook Insti-

---

1. Elijah's father is unknown.

tute, and St. Mary's detoxification unit. Although Robin completed a two-week program for substance abuse rehabilitation in early 1991, she has continued to drink, missed appointments with service providers, and has not complied with recommendations to enter a long-term rehabilitation program and attend Alcoholics Anonymous meetings regularly.

On February 4, 1992, the Department filed a petition for termination of parental rights. The hearing on that petition was consolidated with a judicial review of the child protection order and heard on June 29, 1992. An order terminating Robin's parental rights to Elijah was entered on July 22, 1992.

The District Court may order the termination of parental rights if it finds by clear and convincing evidence both that termination is in the best interest of the child and any one of the following:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S.A. § 4055(1)(B)(2)(a) & (b) (1992). In this case, the court found by clear and convincing evidence elements (i), (ii), and (iv) above, and that the best interest of Elijah favored the termination of Robin's parental rights.

■ We affirm an order terminating parental rights if a review of the entire record results in a determination that the District Court rationally could have found clear and convincing evidence to support its factual conclusions with regard to any one of the alternative bases for terminating parental rights. *In re Peter M*, 602 A.2d 1161, 1163 (Me.1992). The clear and convincing standard is met if the District Court could reasonably have been persuaded that the required factual findings were proved to be highly probable. *In re Jennifer M.*, 610 A.2d 270, 272 (Me.1992).

■ Robin first argues that there is insufficient evidence that she was unable or unwilling to protect Elijah from jeopardy within a reasonable time-frame. She specifically asserts that she had demonstrated progress in addressing her substance and alcohol abuse problems and that she was deprived of a meaningful opportunity to demonstrate her ability to protect Elijah from jeopardy in a reasonable time-frame by the Department's premature termination of her reunification plan in November 1991. She further argues that her psychiatrist's refusal to prescribe medication denied her the opportunity to control her mental condition.

Contrary to Robin's contention, there is no evidence that she was making substantial progress in dealing with her substance abuse problems. Robin was assigned to a new substance abuse counselor in November 1991, the same month that the Department decided to terminate her reunification plan. The counselor testified that since that date she had seen Robin five times, that each time Robin reported that she had continued drinking, and that Robin had missed five appointments with her. After Robin arrived for an early morning appointment while intoxicated, the counselor referred her to a long-term rehabilitation program. Although Robin said that she was willing to attend, she failed to keep at least three appointments regarding admission to such a program.

During this period Robin's psychiatrist refused (and continues to refuse) to prescribe medication for her mental illness because the medication is dangerous when used with alcohol. Robin's continued abuse of alcohol has therefore precluded effective treatment of her mental illness. Robin was admitted to St. Mary's hospital for psychiatric problems and discharged against medical advice on March 4, 1992. Shortly thereafter she was admitted to AMHI.

Robin's case manager testified that Robin was hospitalized for a total of sixty-eight days between October 1991 and June 1992, and that she found Robin intoxicated nine times during that period. On June 18, 1992, Robin was drinking and told the case manager that she did not intend to stop drinking.

In light of evidence that Robin's mental condition cannot be effectively treated until her substance abuse problem is resolved, Robin's repeated unsuccessful attempts at maintaining sobriety, Robin's repeated hospitalizations as a result of her periodic inability to take care of herself, and Robin's failure to participate in both Alcoholics Anonymous and a long-term rehabilitation program in accordance with her therapist's recommendations, the court could have reasonably been persuaded that the fact that Robin was unable to protect Elijah from jeopardy within a time reasonably calculated to meet his needs was highly probable. *See In Re Cassandra B.*, 531 A.2d 1274, 1275 (Me.1987). Thus we have no occasion to review her claim with regard to the findings concerning alternative grounds for termination.

■ Among the factors the court must consider in determining the best interest of a child are the child's physical and emotional needs. 22 M.R.S.A. § 4055(2). Elijah's pediatrician testified that Elijah has exhibited a speech delay that may require therapeutic intervention and that he has asthma. He further stated that Elijah's symptoms from gastroesophageal reflux may reappear and that Elijah's caretaker would need to understand the symptoms to seek prompt medical care. Robin's periodic inability to care for herself due to mental illness and substance abuse make it unlikely that she would be able to recognize early symptoms of Elijah's medical problems and properly administer medication. The pediatrician also testified that a stable home environment is critical in early childhood. Robin's failure to deal with her substance abuse problems, which in turn leads to a failure to treat her mental condition, precludes her from providing a stable home within a time that would meet Elijah's

needs. In determining Elijah's best interest it is also appropriate to consider Robin's inability to protect Elijah from jeopardy or to take responsibility for him within a time calculated to meet his needs. *See In Re Jason B.*, 552 A.2d 9, 11 (Me.1988). The court's finding that it is in the best interest of Elijah to terminate Robin's parental rights is supported by clear and convincing evidence.

■ Over Robin's objection that the evidence was hearsay, the court admitted her medical records from AMHI. She contends that the court's ruling constitutes reversible error. The State offered the AMHI records in evidence pursuant to 16 M.R.S.A. § 357 (Supp.1992), which is in effect an exception to the hearsay rule. The statute provides in relevant part:

Records kept by hospitals and other medical facilities licensed under the laws of this State ... shall be admissible, as evidence in the courts of this State so far as such records relate to the treatment and medical history of such cases and the court shall admit copies of such records, *if certified by the persons in custody thereof to be true and complete*, but nothing therein contained shall be admissible as evidence which has reference to the question of liability....

(emphasis added). Although the records admitted were true, they were not complete as required by the statute and are therefore inadmissible.

■ Even though the records are inadmissible hearsay, however, their admission in evidence is harmless error because under the circumstances it is highly probable that admission of the evidence did not affect the judgment. *Midland Fiberglass, Inc. v. L.M. Smith Corp.*, 581 A.2d 402, 403 (Me. 1990). *See also* M.R.Civ.P. 61; M.R.Evid. 103. Although the court clearly relied on Robin's history of psychological illness and substance abuse in deciding to terminate Robin's parental rights, it was not required to rely on information in the AMHI records. In its order the court stated that Robin had been diagnosed with paranoid schizophrenia and polysubstance abuse, that she had been admitted to AMHI five

times, and that her chemical dependency created a problem in treating her mental illness. Because all of the statements in Robin's AMHI records on which the court could arguably have relied in reaching these findings are duplicated by other sources in the record, the evidence is cumulative and not prejudicial. *See State v. Collins*, 456 A.2d 362, 365 (Me.1983).

Robin finally argues that the District Court erred in admitting the testimony of Elijah's pediatrician pertaining to the relationship between Elijah and his foster mother. Elijah's pediatrician testified over objection that Elijah's foster mother provided a stable home environment for Elijah, that she was emotionally attached to him, that her care has been a source of steadiness for his growth, and that he required a steady, patient, emotionally invested person to help him through behavior problems probably caused by his exposure to cocaine. Robin contends that this evidence is irrelevant because Elijah may not remain with the foster mother if Robin's parental rights are terminated. She also contends that admission of this testimony cannot be considered to be harmless error because the court considered it in determining the best interest of Elijah.

Contrary to Robin's contention, the pediatrician did not indicate that the foster parents might adopt Elijah. He stated that his comments were intended to illustrate the type of environment that Elijah needs and that they should not be construed as an opinion that it is important for Elijah to maintain his relationship with his foster mother. In determining the best interest of a child the court must consider "the child's attachments to relevant persons [and] periods of attachment and separation...." 22 M.R.S.A. § 4055(2). The court may also consider the preference for placing children in permanent homes. *In re Cassandra B.*, 531 A.2d 1274, 1275 (Me. 1987); *see also* 22 M.R.S.A. § 4003(4) (1992); 22 M.R.S.A. § 4050(2) & (3) (1992). Therefore the pediatrician's testimony as to Elijah's need for a stable home environment and statement that the foster mother has provided such an environment to date

are relevant in determining Elijah's best interest.

The entry is:

Judgment affirmed.

All concurring.