In re DAVID G.

Supreme Judicial Court of Maine.

Submitted on Briefs April 13, 1995.
Decided June 9, 1995.

Robert J. Allen, Vandermeulen, Goldman & Allan, P.A., Augusta, for appellant.

Gail Fisk Malone, Bruce C. Mallonee, Rudman & Winchell, Sarah McPartland–Good, G.A.L. Mitchell & Stearns, Bangor, for appellee.

·Before WATHEN, C.J., and GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

The appellant, the mother of David G., appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) terminating her parental rights.[1] She contends that there is insufficient evidence in the record to support the court's findings that she is unwilling or unable to take responsibility for her child within a time reasonably calculated to meet his needs, and that termination of her parental rights is in the child's best interest. In addition, she asserts that the court failed to adequately state its findings. We discern no error and affirm the judgment.

The mother was a patient at the Augusta Mental Health Institute (AMHI) when David was born in 1986. The mother's sister and her husband, David's aunt and uncle, have taken care of David ever since. David's aunt is his legal guardian. They filed a petition to adopt him in February 1992, and in March 1992, they filed this petition for termination of the mother's parental rights.[2]

Following a hearing, the Probate Court found, based on clear and convincing evidence, that the mother was not able to take care of herself or her child, and that termination of her parental rights was in David's best interest. It ordered termination pursuant to 22 M.R.S.A. § 4055 (1992). This appeal followed.

Before a court may order termination of parental rights, it must find both that termination is in the best interest of the

---

1. The order also terminates the rights of the putative father. He has denied paternity and has refused to participate in any of these proceedings.

2. A petition for termination may be sought in connection with an adoption proceeding. 22 M.R.S.A. § 4055(1)(A)(2) (1992).

child,[3] *id.* § 4055(1)(B)(2)(a), and one of the following:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

*Id.* § 4055(1)(B)(2)(b)(i)–(iv). Any of the four alternatives is independently adequate to justify termination, *see In re Misty Lee H.*, 529 A.2d 331, 334 (Me.1987), if supported by clear and convincing evidence. 22 M.R.S.A. § 4055(B)(2); *In re John Joseph V.*, 500 A.2d 628, 629 (Me.1985). The determination that termination is in the child's best interest must also be demonstrated by clear and convincing evidence. *Id.* § (1)(B)(2). In any such action, the trial court must set forth explicitly its findings of fact and conclusions of law. M.R.Civ.P. 52(a); *In re Amber B.*, 597 A.2d 937, 938 (Me.1991).

■ On appeal of a termination order, we review the entire record to determine "whether the factfinder could reasonably have been persuaded that the required factual findings were proved to be highly probable." *In re Jeffrey E.*, 557 A.2d 954, 956 (Me.1989) (quoted in *In re Peter M.*, 602 A.2d 1161, 1163 (Me.1992)). If there is "rational or competent support in the record" for the trial court's findings, this Court must sustain them. *John Joseph V.*, 500 A.2d at 629. The court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." M.R.Civ.P. 52(a).

**3.** The best interest determination should not be reached until the court makes one or more of the findings under 22 M.R.S.A. § 4055(1)(B)(2)(b)(i)-(iv). *In re Leona T.*, 609 A.2d 1157, 1158 (Me.1992).

**I.**

■ The court found that the mother was not able to take responsibility for David within a time reasonably calculated to meet his needs. 22 M.R.S.A. § 4055(1)(B)(2)(b)(ii). As used in the statute, "unable" is "synonymous with incapable." *John Joseph V.*, 500 A.2d at 630. The time reasonably calculated to meet the child's needs is "measured from the child's perspective." *In re Leona T.*, 609 A.2d 1157, 1159 (Me.1992).

■ The mother has been treated for mental illness since 1978, when she was nineteen or twenty years old. She has been admitted to AMHI on numerous occasions since 1981, and has been a resident there for periods as long as six years. Her last treatment there was in 1993. Her illness is characterized by alternating moods of elation and depression,[4] and psychotic symptoms, i.e., thoughts that have no basis in reality. Medication is a necessary part of her treatment; she becomes manic when she fails to take her medication. Based on her history, the course of her illness is not predictable. While it is possible that her symptoms might go into remission with continued treatment, they are likely to continue. Since 1991, the mother has lived in a group home in Portland for people with mental illness. She functions well in that structured and supervised living environment, but there is substantial evidence in the record to indicate that she will never be able to care fully for herself or David.

Given the history of the mother's illness, her continued need for treatment, at least in the form of medication, and the length of time that it would take before she could realistically assume parental responsibilities, if she ever could, the court's finding that she is unable to take responsibility for her son within a time reasonably calculated to meet his needs is supported by the evidence. *See In re Jennifer M.*, 610 A.2d 270 (Me.1992).

**4.** In 1987, her illness was diagnosed as bipolar disorder manic type; the current diagnosis is schizo-affective disorder bipolar type. Regardless of the label, the treatment is the same.

## II.

The mother contends, because the child is presently being raised in a happy, supportive home, and the mother's relationship with him is not disruptive, that the court's finding that termination is in the child's best interest is clearly erroneous. We disagree.

■ In considering a child's best interest, the court is required to consider "the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into his parent's home and the child's physical and emotional needs." 22 M.R.S.A. § 4055(2); *Peter M.*, 602 A.2d at 1163. In addition, a finding of parental inability to take responsibility for the child within a time reasonably calculated to meet his needs is an appropriate consideration when determining what is in a child's best interest. *In re Elijah R.*, 620 A.2d 282, 285 (Me.1993).

■ Based on those statutory criteria, the evidence supports the court's best interest determination in this case. David's attachment to his aunt and uncle and their family is strong and he wants to live with them. He calls his aunt and uncle "mom" and "dad" and is as close to his uncle as "any ... son possibly could be." They treat David as their fourth son. He is emotionally attached to his cousins, aged 16, 15, and 12, and participates in many activities with them. He appears healthy and well adjusted, and has no physical or emotional problems.[5] The guardian ad litem testified "It was clear to me from my observation of [David] interacting with [his aunt and uncle's] family that he was very attached to them and that he loved them and they loved him, and that it was a real nurturing and healthy relationship."

Moreover, the court not only found that David's mother cannot and will not be able to take responsibility for him, but that David's attachment to his mother is much less strong than his attachment to his aunt and uncle's family. David and his mother have visited each other between three and six times per year. Since moving to the group home, the mother has visited with David only two or three times per year. David asks about her, talks to her on the phone occasionally, and wants to continue to see her. His attachment to her, however, is as a family member or a friend whom he sees from time to time.[6] She has never complained about the frequency of the visits.

Even though his mother is not a negative or disruptive force in his life, considering David's age, that he has lived in his present home his entire life, his strong attachment to that home and family, the impossibility of living with his mother, and his physical and emotional needs, the court's determination that termination of parental rights is in David's best interest was not clearly erroneous.

## III.

■ The mother also contends that the court's order does not adequately set forth the findings of fact supporting its order of termination. In every action for termination of parental rights, the court is required to "make findings of fact and state its conclusions of law thereon." M.R.Civ.P. 52(a); *Amber B.*, 597 A.2d at 938. The order here highlights the trial testimony, reciting the evidence on which it bases its specific findings of fact. Although the factual findings could have been more explicit, the order does inform the parties and this Court of the basis of the court's decision. *See In re Sara K.,*

5. There is a possibility that David is genetically predisposed to develop a mental illness. The boy's putative father also suffers from mental illness and was, and is, a patient at AMHI. David's aunt and uncle initiated these proceedings in part because of this potential. Although it is not known whether a person's environment at an early age affects the development of mental illness, they want David to have a healthy and secure life, and a family he can count on. In addition, they are concerned that the mother might exercise poor judgment regarding David's care and that she would be unable to deal with him in a manner appropriate for his age, thus causing him confusion and distress. As an example, there was testimony that the mother told David that he had two mommies and that he was going to go stay with her.

6. David's aunt and uncle have no intention of cutting off contact between David and his mother following termination.

611 A.2d 71, 74 (Me.1992) (court did not fail to state basis of its decision pursuant to M.R.Civ.P. 52(a)).

The entry is:

Judgment affirmed.

All concurring.