1999 ME 68

**In re BRANDI C.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 15, 1999.

Decided April 28, 1999.

Kevin T. Cole, Lundgren & Cole, Portland, for the father.

Rubin G. Segal, Portland, for the mother.

Andrew Ketterer, Attorney General, Michael C. Kearney, Asst. Atty. Gen., Augusta, for appellee.

Kevin Gordon, Pierce Atwood, Portland, for Guardian ad Litem.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The natural parents of Brandi C. appeal from a judgment entered in the District Court (Portland, *Goranites, J.*) terminating their parental rights pursuant to 22 M.R.S.A. § 4055(1)(B)(2)(b)(i) (1992). The parents challenge the court's finding that they acted in a "manner that is heinous and abhorrent to society" pursuant to 22 M.R.S.A. § 4055(1–A)(A) (Supp.1998). Both parents further argue that by denying that they caused the death of their younger daughter, Jenna C., they rebutted the presumption applied by the court that they "were unwilling or unable to protect the child from jeopardy and the circumstances were unlikely to change within a time reasonably calculated to meet the child's needs" pursuant to 22 M.R.S.A. § 4055(1–A) (Supp.1998). We affirm the judgment.

[¶ 2] The record indicates that DHS first took custody of Brandi on August 23, 1996, following the discovery of the death of her younger sister, Jenna. At the time of her death, Jenna was four months twenty-three days old. She had been born prematurely and her parents had only brought her home from the hospital on July 12, 1996.

[¶ 3] The Medical Examiner's Office concluded that Jenna's death resulted from a fractured skull, and classified the death as a battered baby homicide. The Medical Examiner's Report further revealed that the child had several injuries in addition to the fatal head injury. These included a broken left wrist, nine broken ribs, a broken leg, and bruises on her face and body. The evidence established that a responsible caregiver would have noticed these injuries while diapering or bathing the baby, because the injuries would have been painful and swollen and the fractured left leg was shorter than the right leg.

[¶ 4] Both parents acknowledged that they had the sole caretaking responsibility for Jenna. Neither admitted to having caused her death. Each accused the other of having done so.

[¶ 5] The evidence that DHS presented at trial established that both parents have the potential to act with aggressive or violent behavior and either parent could have caused the child's death. The evaluation completed by the Spurwink Clinic Child Abuse Program concluded that both parents presented significant risks of harm to Brandi because no method exists to eliminate concern about either parent without knowing which one is responsible for the child's death. According to the evaluation, even the parent not responsible for the child's death shared the responsibility for not noticing her injuries and had significant work to do to become a safe and protective parent. Consequently, the evaluation recommended that Brandi remain in foster care.

[¶ 6] The statutory presumption at issue reads, in relevant part:

**1–A. Rebuttable Presumption.** The court may presume that the parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if:

    **A.** The parent has acted toward a child in a manner that is heinous or abhorrent to society or has failed to protect a child in a manner that is heinous or abhorrent to society, without regard to the intent of the parent;

22 M.R.S.A. § 4055(1–A)(A) (Supp.1998).

[¶ 7] Contrary to the parents' argument, the court did not err in finding pursuant to section 4055(1–A)(A) that the parents acted "in a manner that is heinous or abhorrent to society" when neither parent noticed that Jenna suffered from multiple, severe injuries and one of them caused her death. Having made this finding, the court acted in accordance with section 4055(1–A) by applying the rebuttable presumption of jeopardy against the parents.

[¶ 8] The application of a rebuttable presumption requires that the party against whom it is directed prove "that the nonexistence of the presumed fact is more probable than its existence." M.R. Evid. 301. If that party does not present any evidence that the

presumed fact is not true, then that fact must be taken as true. *See In re Sarah T.,* 629 A.2d 53, 54 (Me.1993) (presumption that parents were unwilling or unable to protect children from jeopardy and circumstances were unlikely to change within a reasonable time); *Lamb v. Town of New Sharon,* 606 A.2d 1042, 1046–47 (Me.1992) (presumption of abandonment of a road); *Estabrook v. Town of Bowdoin,* 568 A.2d 1098, 1099 (Me.1990) (presumption that town tax collector filed a true copy of a lien certificate with the town treasurer); and *Toomey v. City of Portland,* 391 A.2d 325, 331–32 (Me.1978) (presumption that injury arose out of and in the course of employment).

[¶ 9] Here, neither parent offered any evidence to rebut the jeopardy presumption beyond denying responsibility for their younger daughter's death and accusing the other of having caused her death. Given the abundant evidence offered by DHS that supports the court's application of the jeopardy presumption and the lack of rebuttal evidence offered by the parents, the court did not err in terminating parental rights upon concluding that the parents were unwilling or unable to protect Brandi from jeopardy and that the circumstances were unlikely to change within a time reasonably calculated to meet her needs. *See* 22 M.R.S.A. § 4055(1)(B)(2)(b)(i) (1992).

The entry is:

Judgment affirmed.