2001 ME 3

**In re CHARLES G.**

Supreme Judicial Court of Maine.

Submitted on Brief Dec. 12, 2000.

Decided Jan. 5, 2001.

Margot Joly, LaVerdiere & Assoc., Wilton, for appellant.

Andrew Ketterer, Attorney General, Christopher C. Leighton, Asst. Attorney General, Nora Sosnoff, Asst. Attorney General, Matthew Pollack, Asst. Attorney General, Augusta, for appellee.

Catherine R. Connors, Deborah L. Shaw, Portland, for Guardian ad Litem.

Mary MacMahon, Poland, Guardian ad Litem.

Kevin Joyce, Farmington, for father.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The mother of Charles G. appeals from the judgment of the District Court (Farmington, *Mullen J.*) terminating her parental rights. On appeal, the mother argues, *inter alia*, that (A) the court's reliance on prior orders violated her constitutional rights, (B) there was insufficient evidence to support the court's termination of her parental rights, (C) the court erred

in finding that she did not rebut the presumption found in 22 M.R.S.A. § 4055 (1–A), and (D) it was not in the child's best interest to have his mother's parental rights terminated. We disagree and affirm the judgment.

### A.

■ [¶ 2] The mother asserts that the court violated her constitutional rights by denying her liberty without due process and by denying her equal protection of the laws as guaranteed by Article I, Section 6–A, of the Maine Constitution,[1] when the court "relied" on the order ceasing the State's reunification efforts and the order issued after summary preliminary hearing.

[¶ 3] We have previously noted that "[c]hild protective proceedings are ongoing . . . ." *In re Christmas C.*, 1998 Me 258, ¶ 12, 721 A.2d 629, 632. In *In re Leona T.*, we stated that,

> testimony considered at a hearing on a preliminary child protection order may be considered in rendering a final child protection order pursuant to 22 M.R.S.A. §§ 4034, 4035 (1992) (citing *In re David W.*, 568 A.2d 513, 515 (Me. 1990)). We noted the unitary nature of the two proceedings, as 'part of an overall statutory scheme designed to insure the protection of children.' *Id. Likewise, reunification and termination are unitary in nature.*

  \*  \*  \*  \*  \*  \*

The fact that a further hearing and a higher burden of proof must be met to terminate parental rights does not necessitate that the testimony presented at the reunification hearing be repeated at the termination hearing.

*In re Leona T.*, 642 A.2d 166, 168 (Me. 1994) (emphasis added).

[¶ 4] The mother was represented by counsel at the summary preliminary hearing. The testimony at both of the prior hearings was relevant to the determination of whether to terminate the mother's parental rights. *See In re Leona T.*, 642 A.2d at 168. The mother also had the opportunity to call witnesses and to cross-examine the department's witnesses. In this unitary proceeding, it was well within the District Court's discretion to consider testimony presented at the earlier hearings. Therefore, the court did not err in considering its own previous factual findings, when terminating the mother's parental rights. *Id.* (citing *In the Interest of Adkins*, 298 N.W.2d 273, 277 (Iowa 1980)).

### B.

■ [¶ 5] The mother questions the sufficiency of the evidence presented at the hearing. For parental rights to be terminated, the Department of Human Services must prove by clear and convincing evidence one of four statutory bases, in addition to proving that termination of the mother's parental rights is in the best interest of the child. *See* 22 M.R.S.A. § 4055(1)(B)(2)(1992).[2] "When reviewing

---

1.  Article 1, § 6–A of the Maine Constitution states that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."

2.  22 M.R.S.A. § 4055 states in pertinent part:
    **1. Grounds.** The court may order termination of parental rights if:
    . . . .
    **B.** Either:
    . . . .
    (2) The court finds, based on clear and convincing evidence, that:

(a) Termination is in the best interest of the child; and
(b) Either:
(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;
(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;
(iii) The child has been abandoned; or
(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

sufficiency challenges for clear and convincing evidence, we examine whether the trial court 'could have reasonably been persuaded on the basis of evidence in the record that the required factual findings were highly probable.'" *In re Breauna N.*, 1999 ME 191, ¶ 19, 742 A.2d 911, 915 (quoting *In re Denise M.*, 670 A.2d 390, 393 (Me.1996)). If there is "rational or competent support in the record" for the District Court's findings, we must sustain them. *In re David G.*, 659 A.2d 859, 861 (Me.1995) (citation omitted).

■ [¶ 6] Proof of any one of the four statutory definitions of parental unfitness, pursuant to 22 M.R.S.A. § 4055, is independently adequate to justify termination, if supported by clear and convincing evidence. *In re David G.*, 659 A.2d 859, 861 (Me.1995) (citations omitted). Although it only needed to find one, the trial court found that the Department of Human Services proved three of the statutory grounds by clear and convincing evidence. *In re Kafia M.*, 1999 ME 195, ¶ 10, 742 A.2d 919, 923.

■ [¶ 7] The trial court found by clear and convincing evidence that the mother is unwilling and unable to protect Charles from jeopardy[3] and that these circumstances are unlikely to change within a time frame which is reasonably calculated to meet the child's needs. *See* 22 M.R.S.A. § 4055(1)(B)(2)(b)(i). The question, then, is whether the mother can protect her son from jeopardy, and if not, "the court must determine a time reasonably calculated to meet the child's needs and 'the time frame which the court is gauging must be seen from the child's perspective.'" *In re Annette P.*, 589 A.2d 924, 926–927 (Me.1991) (quoting *In re Christopher J.*, 505 A.2d 795, 798 (Me.1986)). "[W]hile the inquiry concerning parental unfitness pursuant to sections 4055(1)(B)(2)(b)(i) and (ii), concerning the parents' inability or unwillingness to protect the children from jeopardy and to take responsibility for the children, is prospective, the evidence to be considered is retrospective." *In re Nathaniel B.*, 1998 ME 99, ¶ 6, 710 A.2d 921, 922 (citation omitted).

■ [¶ 8] The court, in its child protection order, found that the mother was unable, at that time, to provide her six children with adequate supervision or care, including health care, and that such inadequacies caused a threat of serious harm. The court also found that all of the children had been sexually abused and that the mother was not the abuser. The evidence establishes that the home from which the child was removed was chaotic and that the mother's former husband sexually and physically abused the children.

[¶ 9] Moreover, we have noted that "the emotional difficulties that may attend fos-

---

22 M.R.S.A. § 4055 (1992).

3. "Jeopardy" is defined in 22 M.R.S.A. § 4002.

   **6. Jeopardy to health or welfare or jeopardy.** "Jeopardy to health or welfare" or "jeopardy" means serious abuse or neglect, as evidenced by:

   A. Serious harm or threat of serious harm;

   B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;

   C. Abandonment of the child or absence of any person responsible for the child, which creates a threat of serous harm; or

   D. The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

22 M.R.S.A. § 4002(6) (1992).

"Serious harm" is defined in 22 M.R.S.A. § 4002(10).

   **10. Serious harm.** "Serious harm" means:

   A. Serious injury;

   B. Serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior; or

   C. Sexual abuse or exploitation.

22 M.R.S.A. § 4002(10) (1992).

ter care are included within the statutory definition of jeopardy. We have previously upheld a finding of jeopardy when a child, already vulnerable from earlier abuse and instability, faced 'developmental regression of serious magnitude' if removed from his stable foster home." *In re Colby E.*, 669 A.2d 151, 152 (Me.1995) (quoting *In re Dean A.*, 491 A.2d 572 (Me.1985)). The record demonstrates that the child has made significant positive changes in both his behavioral and personal development since he was removed from his mother's home. There is also significant evidence that the child would face "developmental regression of serious magnitude" if removed from the foster home. The guardian testified that the child feels happy and safe in the foster home. The child himself indicated to the court that he wishes to be adopted by the foster parents. The foster mother also testified that they would like to adopt the child.

[¶ 10] Given the deep attachment that the child now has for his foster family, his expressed desire to be adopted by them, and the lack of rebuttal evidence, pursuant to 22 M.R.S.A. § 4055(1–A), there is sufficient evidence in the record for the trial court to have found that the mother could not protect the child from jeopardy, pursuant to 22 M.R.S.A. § 4055(1)(B)(2)(b)(i). Moreover, given the rebuttable presumption of 22 M.R.S.A. § 4055(1–A)(E), *see infra,* note 4, the District Court did not err in finding that the mother was unable or unwilling to protect the child from jeopardy and that these circumstances are unlikely to change within a time frame which is reasonably calculated to meet the child's needs.

### C.

■ [¶ 11] The mother argues that "there is no evidence in either the prior orders or presented at the TPR hearing to support" the finding that the mother did not rebut the presumption found in 22 M.R.S.A. § 4055(1–A).[4] A rebuttable presumption "requires that the party against whom it is directed prove 'that the nonexistence of the presumed fact is more probable than its existence.'" *In re Brandi C.,* 1999 ME 68, ¶ 8, 728 A.2d 679, 680 (quoting M.R. Evid. 301). Therefore, once there is an initial finding of jeopardy, the child has been in the legal custody of DHS for at least 9 months, and the parents have made no significant effort to correct the situation that led to the jeopardy finding, there is a presumption that the parents are "unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs." *See* 22 M.R.S.A. § 4055(1–A).

■ [¶ 12] The court made its first jeopardy finding on February 12, 1997. The State took custody of the child on January 22, 1999. The record also establishes that the mother received numerous services from the State, including parent education and counseling services. The court did not err in applying the rebuttable presumption. *See* 22 M.R.S.A. § 4055(1–A)(E).

### D.

■ [¶ 13] The mother also argues that it is not in the child's best interest that her

4. 22 M.R.S.A. § 4055(1–A) states, in relevant part:

    **1–A. Rebuttable presumption.** The court may presume that the parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if:

        ❖        ❖        ❖        ❖        ❖        ❖

    E. The child has been placed in the legal custody or care of the department for at least 9 months, and the parents have been offered or received services to correct the situation but have refused or have made no significant effort to correct the situation.

22 M.R.S.A. § 4055(1–A)(E) (Supp.2000).

parental rights be terminated. The court cannot consider the best interest of the child, pursuant to 22 M.R.S.A. § 4055(1)(B)(2)(a), until after the trial court finds, by clear and convincing evidence, one of the four statutory parental unfitness prongs. *In re Ashley A.*, 679 A.2d 86, 89 (Me.1996).

[¶ 14] In considering whether termination of parental rights are in the best interest of the child, the trial court must consider the needs of the child, including in its analysis, the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home, and the child's physical and emotional needs. *See* 22 M.R.S.A. § 4055(2) (Supp.2000). The court must also consider, but is not bound by, the wishes of a child 12 years of age or older in making a termination order. 22 M.R.S.A. § 4055(3) (Supp.2000).

[¶ 15] At the time of the hearing, the child had been in foster care for almost one full year. The child, then age 12, indicated to the judge that he wished to be adopted by the foster family. The foster mother testified that they would like to adopt the child. Because of the child's strong attachment to the foster family and because visitation with the mother ceased nearly one year ago, placing the child back into the family home is likely to cause him significant emotional difficulties. *See* 22 M.R.S.A. § 4055(2). Therefore, based on the foregoing, the trial court did not err in finding that termination is in the child's best interest.

[¶ 16] The mother's other contentions are without merit. Therefore, we decline to address them.

The entry is:

Judgment affirmed.