STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
DOCKET NO. AP-14-54

IN RE: VERDELLE G.

**ORDER**

STATE OF MAINE
Cumberland. ss, Clerk's Office

AUG 2 4 2015

RECEIVED

I.      Background

A. Procedural Posture

Before the court is Petitioner Verdelle G.'s appeal from an order by the District Court (*Powers*, J.) of involuntary commitment and involuntary treatment dated November 12, 2014. Petitioner contends that the court failed adhere to the "clear and convincing evidence" standard required by Maine law and that there was insufficient evidence to support his involuntary commitment and treatment. The State responds that Petitioner's behavior and the severity of his mental illness support the order.

B. Facts

Petitioner was admitted to Spring Harbor Hospital on October 16, 2014.[1] (Tr. 6.) Petitioner's treating psychiatrist, Dr. William Brennan, testified that that upon admission to the Hospital, Petitioner was "unwilling to talk" and had an "extremely disorganized thought process." Petitioner was unable to have a conversation and could not provide a history regarding his behaviors in the community. (Tr. 7-8.) He further testified that Petitioner refused to accept psychotropic medication. (Tr. 8.) As a result, on October 20, 2014, the Hospital filed an

---

[1] This was not Petitioner's first admission. He was hospitalized for a period of five weeks in 2013. (Tr. 6.)

1

application in the District Court for the involuntary hospitalization of the Petitioner pursuant to 34-B M.R.S. § 3864(4) (A). (Tr. 7.) The application resulted in a 120-day commitment. *Id.*

Petitioner was transferred during his commitment period to Riverview Psychiatric Hospital ("Riverview") in Augusta. *Id.* He remained at Riverview for approximately five months. *Id.* Dr. Brennan further testified that it took the staff approximately four months to stabilize Petitioner after he began taking medication. *Id.* He was ultimately discharged from Riverview in April of 2014. *Id.* Upon discharge, Petitioner ceased taking his prescribed medications. (Tr. 7.)

Judson D. Smith, Ed.D., was appointed by the court pursuant to 34-B M.R.S. § 3864(4) to determine whether the Petitioner was mentally ill, whether Petition posed a threat to himself or others, and whether there were adequate community resources available to treat Petitioner's illness. (Tr. 24.) Dr. Smith classified the Petitioner as "somewhat eccentric." (Tr. 25.) He anticipated that in a social setting, Petitioner may attract attention and any decompensation would affect his daily life. *Id.* Dr. Smith concurred with Dr. Brennan that Petitioner is affected by paranoid schizophrenia. (Tr. 26.) He further testified that if released, Petitioner would "probably not" take his medication. *Id.*

Petitioner was also examined by Constance Jordan, MSN, ANP, PMHNP, a psychiatric nurse practitioner. Jordan testified that most of the conversations she had with Petitioner were "not reality based." (Tr. 28.) She further testified that Petitioner minimized an incident that occurred while he was carrying a large wooden stick. He allegedly described the incident as a "scuffle in the park," however; Jordan described the incident as a "pretty significant assault." *Id.* Jordan reiterated that the longer an individual goes untreated, the longer it takes to treat the individual's mental illness. (Tr. 29.) When asked about the course of treatment recommended

for someone like the Petitioner, Jordan described a combination of oral and injectable medications. She indicated that she concurred with the treatment plan set forth by Dr. Brennan. (Tr. 30.)

Finally, Petitioner's mother testified that her son has been mentally ill since he was 23 years old. (Tr. 42.) She testified that when he is off his medication she is fearful of the Petitioner and uncomfortable with his instability. *Id.* However, she indicated that if her son received adequate treatment and continues to take his medication, he will be welcome in her home. (Tr. 43.)

Dr. Brennan, Dr. Smith, and Constance Jordan are in agreement that Petitioner suffers from paranoid schizophrenia. (Tr. 8, 26). A commitment period not to exceed 120-days was recommended. (T. 31.)

The District Court concluded that Petitioner was mentally ill, he posed a likelihood of harm, adequate support in the community was unavailable, and inpatient hospitalization was the best available means for treatment. (Tr. 45-47.) The court further found that Petitioner lacked capacity to make informed decisions regarding treatment, that he was unable or unwilling to comply with recommended treatment, and that his need for treatment outweighs the risks and side effects. (Id.) The court ordered involuntary commitment and treatment. Petitioner timely appealed the order pursuant to M.R. Civ. P. 76D.

II.    Discussion

This appeal presents two issues. The first is whether the District Court committed clear error in ruling that the Hospital met its burden of proof by clear and convincing evidence that the Petitioner is mentally ill and poses a likelihood of serious harm. The second issue is whether the District Court committed clear error in ordering involuntary treatment, including whether

3

Petitioner lacks capacity to make an informed decision and whether failure to treat the illness is likely to produce lasting or irreparable harm to the Petitioner. The court addresses each in turn.

A. Standard of Review

The involuntary commitment statute in Maine requires proof of mental illness and likelihood of harm by "clear and convincing evidence." 34-B M.R.S. § 3864(6)(A)(1). If "rational or competent support in the record" exists for the District Court's findings, a reviewing court must sustain them. *In re Charles G.*, 2001 ME 3, ¶ 5, 763 A.2d 1163 (citing *In re David G.*, 659 A.2d 859, 861 (Me. 1995)). "[T]he District Court's findings of fact are not set aside unless they are clearly erroneous." *In re Marcial O.*, 1999 ME 64, ¶ 21, 728 A.2d 158.

B. Involuntary Commitment

To involuntarily commit an individual, the District Court must find by clear and convincing evidence that "(1) the person is mentally ill and that the person's recent actions and behavior demonstrate that the person's illness poses a likelihood of serious harm; (2) adequate community resources for care and treatment of the person's mental illness are unavailable; (3) inpatient hospitalization is the best available means for treatment of the patient; and (4) [satisfaction] with the individual treatment plan offered by the psychiatric hospital to which the applicant seeks the patient's involuntary commitment." 34-B M.R.S. § 3864(6)(A)(1)-(3).

Petitioner contends that because the District Court failed to specify that its findings were made by clear and convincing evidence the decision cannot stand. The court, however, expressly stated on the record that clear and convincing evidence supported the finding that Petitioner is mentally ill and posed a threat of harm to himself and others. (Tr. 45-47.)

The witnesses testified that Petitioner has paranoid schizophrenia. (Tr. 8, 26.) Upon discharge from Riverview, Petitioner stopped taking his medications. (Tr. 7.) He was involved

4

in an assault while brandishing a stick and was known to carry a large broom with sharpened ends in his group home. (Tr. 10, 28.) He was considered threatening to other residents at his group home. Petitioner's recent behavior poses a further likelihood of harm to himself in that he is unable to provide himself with basic care. Since his discharge from Riverview, he allowed food to spoil in his apartment, refused to eat, and barricaded himself in the unit. (Tr. 10.) Clear and convincing evidence in the record supports the District Court's finding.

Finally, adequate evidence in the record supports the finding that adequate community resources and treatment are unavailable and inpatient hospitalization is the best available means for treatment. For example, Dr. Brennan testified that Petitioner's behavioral history in a group home setting has made finding a new placement difficult. (Tr. 15.) The last time Petitioner was placed in a group home, the search took a "considerable amount of time." *Id.* Petitioner does not appear to have family in the community with whom he could stay. Petitioner's mother is unwilling to take Petitioner into her home as she is fearful of his behavior. (Tr. 42.) Based on the foregoing, the District Court did not err in ordering involuntary commitment.

C. Involuntary Treatment

To order involuntary treatment, the court must find the following:

(1) That the person lacks the capacity to make an informed decision regarding treatment;

(2) That the person is unable or unwilling to comply with recommended treatment;

(3) That the need for the treatment outweighs the risks and side effects; and

(4) That the recommended treatment is the least intrusive appropriate treatment option.

34-B M.R.S. § 3864(7-A)(1)-(4).

5

Petitioner contends that because there is no evidentiary standard expressly stated in the statute, the court must be held to the heightened standard of clear and convincing evidence. The State responds that the appropriate standard is preponderance of the evidence given that similar proceedings, such as guardianship proceedings, employ such standard. The court need not reach whether the preponderance standard applies to the involuntary treatment statute because the District Court's order was supported by clear and convincing evidence.

There was sufficient evidence to establish Petitioner lacks capacity to make an informed decision regarding treatment. For example, when the District Court judge questioned Petitioner as to his discontinuance of medication, the Petitioner responded that he was taking fish oil multiple times per day as well as multivitamins for his depression (Tr. 41.) Petitioner does not believe that he truly has a mental illness. (Tr. 18.) When Petitioner was prescribed medication, he refused to take them and discontinued taking them after discharge. (Tr. 8.)

Both Dr. Brennan and Constance Jordan testified that the benefits of Petitioner's treatment outweighed the side effects. (Tr. 13-14, 31-32.) Dr. Brennan testified that the longer Petitioner goes without treatment, the more difficult his illness will become to treat. (Tr. 9.) Adequate evidence supported the District Court's finding that the need for Petitioner's treatment outweighs the risks and side effects.

III.    Conclusion

Based on the foregoing, the District Court's order of involuntary commitment and involuntary treatment was supported by clear and convincing evidence and therefore must be affirmed.

6

The clerk shall enter the following:

The Petitioner's appeal is DENIED, the District Court's order is AFFIRMED.

SO ORDERED.

DATED: August 24, 2015

Roland Cole
Chief Justice, Superior Court

Date Filed: 11-26-14    CUMBERLAND
                        COUNTY

Action: DISTRICT COURT APPEAL - MH

IN RE: VERDELLE GERVAIS          **IMPOUNDED**

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Rubin Segal, Esq.<br>97 India St.<br>Portland, ME 04101 | Christopher Leighton, AAG<br>6 State House Station<br>Augusta, ME 04333-0006 |

Date of Entry
2014